CARR *v.* WATKINS ET AL.

[No. 164, September Term, 1961.]

*Decided February 20, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Melvin M. Feldman* for the appellant.

*Douglas H. Moore, Jr., Assistant County Attorney for Montgomery County,* with whom was *Alfred H. Carter, County Attorney,* on the brief, for Kenneth Watkins and Lloyd Whalen, two of the appellees.

*Kathryn H. Baldwin, Attorney, United States Department of Justice,* with whom were *William H. Orrick, Jr., Assistant Attorney General, Joseph D. Tydings, United States Attorney,* and *Alan S. Rosenthal, Attorney, Department of Justice,* on the brief, for William H. Gould, the other appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant Carr sued Gould, an officer in the security division of the Naval Ordnance Laboratory in Silver Spring, and Watkins and Whalen, officers of the Montgomery County Police Department, because they had transmitted to his employer information as to charges that had been brought against him years ago and his employer had consequently discharged him. The amended declaration is in five counts, sounding respectively in slander, invasion of privacy, the divulging of information without legal right, malicious interference with the contract of employment, and conspiracy to cause termination of the plaintiff's employment. Judge Shure sustained demurrers to the declaration, holding that all the defendants were absolutely privileged as to the slander count, that the tort of invasion of privacy did not exist in Maryland, and that the conspiracy count was defective in failing to allege fraud.

The declaration alleges in the first count that in April 1960 the defendants did wrongfully and maliciously speak and publish of the plaintiff "That Carr had been fired from the Naval Ordnance Laboratory for molesting kids" and "That Carr had been fired from the Naval Ordnance Laboratory for being drunk," which caused his discharge from his employment as a security guard at a regional shopping center in Montgomery County.

The second count alleges that in April 1954 Carr was employed at the Naval Ordnance Laboratory, that "certain charges" pertaining to his suitability for continued employment were then preferred against him and were heard by the appropriate officials of the installation, and that he was cleared and exonerated and his employment continued. It alleges further that despite Carr's "right to pursue in peace and privacy any employment that he chose" and his right to be secure and "let alone" in his personal life and affairs, the defendants violated their duty to let him "be let alone * * * in his employment, and personal life and affairs [by] maliciously, wilfully and wrongfully" revealing and communicating to Carr's employer the fact that charges had been preferred and "the nature, result and particulars of the same," knowing that the consequence would be his discharge from employment.

The third count alleged the defendants had a duty "not to use information obtained by them * * * outside the scope, authority and duty of their offices," and that they "wilfully, wrongfully and maliciously" violated this duty, knowing that their action would cause Carr to lose his position.

The fourth count charges that the defendants did "induce and coerce" Carr's employer to discharge him and thereby did "knowingly, wilfully, wrongfully and maliciously interfere with the plaintiff's employment and occupation."

The fifth count alleges that the defendants "maliciously, wrongfully, wilfully and knowingly" did "conspire against the plaintiff for the wrongful purposes of seeing that the plaintiff lost his then employment in Montgomery County * * * and did not obtain future employment in said county of a similar nature."

The validity of the counts of the declaration—in slander, invasion of privacy, the divulgence of information without legal right, malicious interference with contract rights, and conspiracy to interfere with such rights (all of which to some extent, and the last two in particular, overlap, *Horn v. Seth,* 201 Md. 589, 597)—depends in the final analysis, as we see it, on whether the defendants, in communicating or knowingly causing to be communicated to Carr's employer the charges made against him years ago, were sheltered from liability by

privilege or immunity because of their status as agents of a government, performing their duties.

We find it clear that if there was immunity from liability for defamation, there was immunity from liability for the other alleged torts claimed by the declaration to have been committed. In *Walker v. D'Alesandro,* 212 Md. 163, 169, it was noted that privilege is not limited to immunity from liability for defamation, citing 1 *Restatement, Torts,* Sec. 10, and *Prosser, Torts* (2d ed.), Sec. 16. In *Barr v. Matteo,* 360 U. S. 564, 569, 3 L. Ed. 2d 1434, the Supreme Court held that the acting director of the Office of Rent Stabilization, a federal agency, was entitled to an absolute privilege in an action of libel. The opinion not only spoke of the law of privilege as an absolute defense for federal officers in civil suits for libel but included "kindred torts" and cited with approval other federal cases in which absolute privilege or immunity had been held to be a defense in actions for false arrest and malicious prosecution, such as, for example, *Gregoire v. Biddle,* 177 F. 2d 579 (2d Cir.) (*per* L. Hand, C. J.), and *Yaselli v. Goff,* 12 F. 2d 396 (2d Cir.), aff'd *per curiam,* 275 U. S. 503, 72 L. Ed. 395. In other federal cases immunity has been granted in a variety of tort actions.[1] See also 41 Am. Jur. "Privacy" Sec. 20; Warren and Brandeis, "The Right to Privacy," 4 Harv. L. Rev. 193, 216-7; Note, 69 Harv. L. Rev. 875, 920.

Different standards apply to the federal officer, Gould, and the Montgomery County policemen, Watkins and Whalen, in determining whether they enjoy immunity. The Supreme Court in *Barr v. Matteo, supra,* decided that the immunity the Court had previously given executive officers of Cabinet rank in *Spalding v. Vilas,* 161 U. S. 483, 40 L. Ed. 780, from liability for defamation while acting as their duties required or inherently permitted, also extended to federal agents of

---

1. De Busk v. Harvin, 212 F. 2d 143 (5th Cir.) (conspiracy and malicious treatment to effect discharge from employment); Jones v. Kennedy, 121 F. 2d 40 (D. C. Cir.), cert. den. 314 U. S. 665 (conspiracy to destroy business); Lang v. Wood, 92 F. 2d 211 (D. C. Cir.), cert. den. 302 U. S. 686 (malicious prosecution); Standard Nut Margarine Co. v. Mellon, 72 F. 2d 557 (D. C. Cir.), cert. den. 293 U. S. 605 (destruction of business).

lower standing, apparently no matter what their rank. The Court said:

> "It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted—the relation of the act complained of to 'matters committed by law to his control or supervision,' *Spalding v. Vilas, supra* [161 U. S.] at 498—which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits."

The rationale of the decision was that the benefit to the public of having its governmental agents free to act as the duties of their offices required without fear of harassment or responsibility for damages at the suit of a citizen outweighed the protection of the individual against damage caused by oppressive or malicious action of a federal official. The decision, as seen above, predicated immunity on whether the act complained of was within the scope of the official's duties rather than the official's rank in the governmental hierarchy.[2]

Since Gould is a federal employee and his defense of immunity rests upon the claim that he was acting within the scope of matters committed to his execution, supervision, or control, the federal rule is here controlling and must be applied by us as to him. The Supreme Court flatly so held in *Howard v. Lyons,* 360 U. S. 593, 597, 3 L. Ed. 2d 1454.

The declaration does not state or suggest that Gould was acting within the scope of his duties. On the contrary, in counts three and four it is alleged that the defendants acted outside the scope, proper authority, and duties of their offices. From the pleadings it is difficult to perceive, or indeed to conceive, how Gould's duties as an officer of the security division of the Naval Ordnance Laboratory required or permitted him appropriately to volunteer, directly or indirectly, to the employer of a former co-worker (neither of whom had

---

2. 3 *Davis, Administrative Law Treatise,* Sec. 26.01 (1960 Pocket Part), says: "[T]he law before the Barr decision was overwhelmingly what the majority held it to be in the Barr case * * *."

any connection with the Laboratory in 1960) that the co-worker had six years before been charged with molesting a minor and with drunkenness—particularly since he had been exonerated and continued in employment until he resigned. No threat to the security of the Laboratory appears to have been involved, and no benefit to it would seem to be gained by Carr's dismissal as a guard at a shopping center.

Therefore, the question of whether Gould was or was not acting in the exercise of duties committed to him must be determined from the evidence to be adduced at the trial.[3]

The Montgomery County police officers are in a somewhat different position. Maryland has not adopted the rule laid down in the *Barr* case but, on the contrary, this Court has shown reluctance to extend absolute privilege or immunity from liability for torts to government officers of a higher rank than these defendants. *Walker v. D'Alesandro,* 212 Md. 163; *Maurice v. Worden,* 54 Md. 233; see also *Brush-Moore Newsp. v. Pollitt,* 220 Md. 132, 139. It has been felt that a qualified privilege is sufficient, so that immunity is conditioned upon absence of malice (unlike the situation where there is absolute privilege) and also upon action within the scope of the actor's duties and authority. *Walker v. D'Alesandro, supra;* 3 *Davis, Administrative Law Treatise,* Secs. 26.01-26.05; *Prosser, Torts* (2d ed.), Sec. 109, pp. 780-4; Comment, 70 U. Chi. L. Rev. 677.[4]

The matters of malice and the scope of their duties must be determined as to Watkins and Whalen from the testimony

---

3. Judge Shure relied on 5 U. S. C. Sec. 1002 in holding that Gould properly made public the information as to Carr. The appellant says the pertinent statute is 5 U. S. C. Sec. 22. Each side asks us to take judicial notice of differing Navy Regulations, which each says supports its position as to the authority for Gould's acts. The conflict can be most appropriately settled at the trial level, initially.

4. We are dealing here with torts alleged to have been wilfully and maliciously committed, not with acts of unintended negligence committed in the course of discretionary duties for which qualified immunity was given in cases such as Carder v. Steiner, 225 Md. 271; State, Use of Clark v. Ferling, 220 Md. 109; and Cocking v. Wade, 87 Md. 529.

presented at the trial since a defense of qualified privilege is not available on demurrer in Maryland. *Pollitt v. Brush-Moore Etc., Inc.*, 214 Md. 570; *Walker v. D'Alesandro, supra.*

Judge Shure said, in sustaining the demurrer, that he could find nothing to indicate that Maryland has ever recognized the right to redress for unwarranted invasion of privacy. We see no reason why it should not in a proper case. Recognition of the tort has been rapid in the years since 1890. See Warren and Brandeis, "The Right to Privacy," 4 Harv. L. Rev. 193 (1890), and Prosser, "Privacy," 48 Cal. L. Rev. 383, 386-9 (1960), wherein the author points out that the right of privacy or "to be let alone" is now recognized in thirty-one states and the District of Columbia, that there are indications that it will be recognized in seven other jurisdictions, and that it is still rejected in but three states. He lists Maryland as likely to recognize the tort, on the strength of the case of *Graham v. Baltimore Post Co.*, Daily Record, Nov. 9, 1932 (Super Ct. of Baltimore City), reported verbatim and discussed in 22 Ky. L. J. 108. 1 *Harper and James, The Law of Torts*, Secs. 9.5-9.7, and *Prosser, Torts* (2d ed.), Ch. 20, also discuss the widespread recognition of a right of redress for the wrongful invasion of privacy.

4 *Restatement, Torts*, Sec. 867, states the law to be that "A person who unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public is liable to the other." Comment d says in part: "The rule stated in this section is not dependent upon conduct which, aside from the invasion of privacy, would be tortious, such as trespass to land or chattels or defamation. * * * liability exists only if the defendant's conduct was such he would have realized that it would be offensive to persons of ordinary sensibilities. * * * The damages whether nominal, compensatory or punitive can be awarded in the same way in which general damages are given for defamation."

The *Restatement* further points out in Comment a to Sec. 867 that the tort of invasion of privacy in some aspects is similar to the interest in reputation which is the basis for an action for defamation, since both interests have relation

to the opinions of third persons. On the other hand, unlike defamation, the right of action in invasion of privacy does not depend on the falsity of a statement or communication which amounts to such an invasion. *Prosser, Torts* (2d ed.), p. 638; Warren and Brandeis, "The Right of Privacy," 4 Harv. L. Rev. 193, 218.

Cases which have sustained a claim of violation of the right of privacy which have some analogy to the factual situation alleged by the declaration before us, include those in which the right of one arrested not to have his fingerprints and picture disseminated or exhibited prior to conviction, unless he becomes a fugitive from justice, has been recognized. See *State v. Tyndall*, 66 N. E. 2d 755 (Ind.) ; *Schulman v. Whitaker*, 42 So. 227 (La.) ; *McGovern v. Van Riper*, 43 A. 2d 514 (N. J. Ch.), aff'd 45 A. 2d 842 (N. J.). See also Annotations, 168 A. L. R. 446, 461; 138 A. L. R. 22, 89.

In *Downs v. Swann*, 111 Md. 53, the lower court dissolved a preliminary injunction obtained by Downs against being fingerprinted and photographed before trial. This Court affirmed that action but said: "[W]e must not be understood * * * to countenance the placing in the 'rogues gallery' of the photograph of any person, not a habitual criminal, who has been arrested but not convicted on a criminal charge, or the publication under those circumstances of his Bertillon record." *Cf.* Code (1957), Art. 27, Secs. 692-4; *cf. Chappell v. Stewart*, 82 Md. 323.

The appellees argue that there can be no oral invasion of privacy. Several relatively early cases in this area so stated,[5] but later cases have not agreed. In some of the later cases, creditors have unduly harassed debtors by ostentatious and vigorous complaints to their employers, or other extreme publicity, and these situations bear some analogy to the case at bar. See *Norris v. Moskin Stores, Inc.*, 132 So. 2d 321 (Ala.) ; *Biederman's of Springfield, Inc. v. Wright*, 322 S. W. 2d 892 (Mo.) ; *Housh v. Peth*, 133 N. E. 2d 340 (Ohio) ; *cf.*

---

5. See, for example, Melvin v. Reid, 297 P. 91 (Cal. App.) (*dictum*); Cason v. Baskin, 20 So. 2d 243 (Fla.) (*dictum*); Gregory v. Bryan-Hunt Co., 174 S. W. 2d 510 (Ky.) (alternative basis of decision).

*Bennett v. Norban,* 151 A. 2d 476 (Pa.). See also 41 Am. Jur. "Privacy" Sec. 30; and Annotation, 15 A. L. R. 2d 108, 158, 160. The reason usually given for non-liability in case of oral invasion of privacy was that the chance of damage would be slight. See *Prosser, Torts* (2d ed.), p. 641; Warren and Brandeis, "The Right of Privacy," 4 Harv. L. Rev. 193, 217. Here, special serious damage is alleged to have resulted to the plaintiff and the reason for the rule would be lacking. In any event, we follow the cases last cited as to the sufficiency of an oral communication to support an action for invasion of privacy which has the other requisites.

Judge Shure's last reason for sustaining the demurrer was that the acts or representations of conspirators must be fraudulent and false to be actionable. This may be so in an action of deceit, 1 *Poe, Pleading and Practice* (Tiff. ed.), Sec. 199, but in an action on the case one may maintain suit against several for conspiring to do, and actually doing, some unlawful act to his damage. *Kimball v. Harman,* 34 Md. 407, 409. The act done must be one which if done by one alone would be unlawful; the fact of the conspiracy is a matter of aggravation. *Miller v. Preston,* 174 Md. 302, 312, and cases cited. If the communications made by the defendants to Carr's employer were legally unwarranted and they conspired to make them, and Carr suffered damage, all of which the declaration alleges, he has a right of action against them.

> *Judgment reversed, with costs, and case remanded for further proceedings.*