# MONTGOMERY COUNTY, MARYLAND ET AL. *v.* WALSH ET AL.

[No. 201, September Term, 1974.]

*Decided April 14, 1975.*

The cause was argued before Murphy, C. J., and Singley, Smith, Digges, Levine and O'Donnell, JJ., and Richard P. Gilbert, Associate Judge of the Court of Special Appeals, specially assigned.

*Alfred L. Scanlan* with whom were *James R. Bieke, Shea & Gardner, Richard S. McKernon, County Attorney, Richard E. Frederick, Assistant County Attorney,* and *Ralph J. Moore, Jr.,* on the brief, for appellants.

*George A. Nilson, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Henry R.*

504

*Lord, Deputy Attorney General,* on *amicus curiae* brief, for State of Maryland.

*Amicus Curiae* brief filed by American Civil Liberties Union, *Gary Howard Simpson* on the brief.

*Amicus Curiae* brief filed by Board of Education of Montgomery County, *Robert S. Bourbon* and *John T. Horton* on the brief.

*Amicus Curiae* brief filed by Board of Trustees of Montgomery Community College, *Robert S. Bourbon* on the brief.

*Stanley B. Frosh,* with whom was *A. Howard Metro* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court.

The Montgomery County Financial Disclosure Ordinance (the County Ordinance), codified as Chapter 20A of the Montgomery County Code (1974), requiring designated elected and appointed officials and employees of the County to disclose certain of their financial interests, was declared "unconstitutional, null and void in its entirety" by the Circuit Court for Montgomery County (Moorman, J.) on October 10, 1974. The court found that the Ordinance was in conflict with a public general law of the State and as such was void; that it violated the constitutional right of privacy of County employees, their spouses and children; that it violated the constitutional right of County employees to hold public employment; that the Ordinance was so vague and indefinite that it violated the due process provisions of the federal and state constitutions; that it denied certain employees the equal protection of the law; and that it violated other constitutional provisions and was in conflict with the Montgomery County Charter and the Code of Professional Responsibility. We granted certiorari prior to decision by the Court of Special Appeals on the appeal taken to that court by the County so that we could promptly

consider the significant public issues presented in the case. *See* Maryland Code (1974) Courts and Judicial Proceedings Article, § 12-201.

The seeds of this controversy are found in the 1973 enactment of a public general law by the General Assembly of Maryland requiring certain elected and appointed officials within the State government, and candidates for such elective offices, to file statements with the Secretary of State publicly disclosing designated financial interests held by them.[1] That Act (Chap. 3, 1st Sp. Sess. of 1973), now codified as Code (1971 Repl. Vol., 1974 Cum. Supp.) Art. 33, §§ 29-1 through 29-11 (the State Act), contains a legislative declaration in § 29-1 "that our system of representative government is dependent in part upon the people maintaining the highest trust in their public officers . . . that the people have a right to be assured that the financial interests of holders of and candidates for public office present no conflict with the public trust . . . [and that] the purpose of this act [is] to promote the continued trust and confidence of the people of the State of Maryland in the integrity of their public officers."

The State Act requires in § 29-5 that the declarant annually disclose his interests in real property; interests in all corporations; interests in other entities doing business with the State; the receipt of certain gifts; a schedule of all offices, directorships and salaried employment with corporations or other entities doing business with the State; a schedule of all liabilities (other than retail credit accounts) owing to persons doing business with the State, including liabilities incurred by the declarant's spouse or children if he was involved in the transaction giving rise to the liability; and a list of all members of the declarant's immediate family who were employed by the State in any capacity. The

---

1. The elected offices are: Governor, Lieutenant Governor, Attorney General, State Comptroller, State Senator, State Delegate, State's Attorney, Clerk of the Circuit Court, Register of Wills and Sheriff. The appointed officials are: Deputy Attorney General, Deputy State Comptroller, State Treasurer and Deputy Treasurer, Secretary of State and Secretary and Deputy Secretary of a principal Executive Department of State government.

term "interest" is broadly defined in § 29-2 (a) of the State Act to embrace any legal or equitable interest owned or held by the declarant, in whole or in part, jointly or severally, directly or indirectly, at any time during the reporting period; it does not include, however, an interest in a time or demand deposit in a financial institution. Nor does it include an interest in an insurance or endowment policy or a fixed dollar annuity contract. The phrase "[b]usiness with the State" is defined in § 29-2 (d) to mean "any one or any combination of sales, purchases, leases or contracts to, from, or with the State, or any agency thereof, involving consideration of . . . $10,000 or more on a cumulative basis during . . . [the reporting period]." Section 29-6 provides that with respect to interests in real property and corporations and in other entities doing business with the State, any interest held by the spouse or children of the declarant shall be considered his interest if directly or indirectly controlled by him. Section 29-6 (b) provides, in effect, that the declarant must disclose an interest held by a business entity only if he holds a 30% or greater interest in it. Section 29-10 provides that each county of the State, the City of Baltimore and each incorporated municipality

> "[is] hereby directed to enact public financial disclosure requirements with respect to any local officials of their respective jurisdictions, including candidates for election to such offices, the standards and requirements of which must be substantially those required by this subtitle for State officials and candidates . . . ."

Section 29-11 authorizes the Governor, by Executive Order, to require persons holding "State positions compensated in whole or in part by public funds and noncompensated gubernatorial appointees" to disclose annually, as public records, "such relevant information concerning their financial affairs as he may deem necessary to promote the continued trust and confidence of the people in the executive branch of the State government."

By Executive Order dated April 1, 1974, the Governor

promulgated an extensive schedule of nonelective "offices and positions" in the State government and required that persons occupying such offices and positions make the same public financial disclosure as that mandated by the provisions of the State Act.

The Montgomery County Financial Disclosure Ordinance was enacted by the County Council on June 18, 1974 and became effective on June 28, 1974. It recited in § 20A-1 that it was the purpose of the Ordinance "to implement at the local level the provisions of Chapter 3 of the 1973 Acts of the General Assembly and to promote the continued trust and confidence of the citizens of Montgomery County in the integrity of their public officers." Section 20A-3 of the Ordinance requires persons holding, and candidates for the elective offices of County Executive, County Surveyor and members of the County Council and County Board of Education, and persons holding or appointed to other designated "offices and positions" in the County, to annually make a public disclosure of their financial interests, and those of their spouses and dependent children, in accordance with the dictates of § 20A-5. That section requires that the declarant disclose, for the reporting period, interests in real property; interests in any business entity or profession; "all other assets of every nature whatsoever in excess of $1000 each not otherwise reported"; all income received by the declarant and its source, together with a statement of the gross income of the declarant's spouse and dependent children, "including the source of any portion of such income which may reasonably be expected to have a direct or indirect effect on the activities with the County of the . . . [declarant]"; a schedule of certain gifts received; a schedule of all offices and directorships held in any corporation or other business entity and the amount of compensation received therefrom; a schedule of all liabilities (other than retail accounts) in excess of $1,000 owing to any person doing business with the County or who is regulated, inspected or licensed by the County, including such liabilities incurred by the declarant's spouse or children if the declarant was involved in the transaction giving rise to the liability; and a

list of all members of the declarant's immediate family employed in any capacity by the County. Section 20A-6 provides that with respect to interests in real property and in any business entity or profession, any interest held by the declarant's spouse, father, mother, brother, sister, or child shall be considered his interest if directly or indirectly controlled by him at any time during the reporting period. Section 20A-6 (b) provides, in effect, that the declarant must disclose any interest in a business entity in which he held a 30% or greater equity interest during the reporting period. "Interest" is defined in § 20A-2 (a) of the Ordinance in terms similar to those contained in the State Act, except that it includes an interest of over $1,000 in a time or demand deposit in a financial institution; it also includes an interest in an insurance or endowment policy or fixed dollar annuity contract.

In addition to persons required by § 20A-3 to disclose their financial interests, § 20A-3 (c) makes provision for the filing of financial disclosure statements by "[a]ny other official, employee or appointee" of the County where it is determined by designated authority that it is "desirable to promote the trust and confidence of the citizens of the County . . . ." Financial disclosure statements filed under this subsection need not be made public. § 20A-4 (f). Provision is also made in § 20A-3 (d) of the Ordinance for excusing certain employees, otherwise subject to the filing requirements, from filing disclosure statements where "it is determined [by the appointing authority] that the duties of the position are such that the likelihood of the incumbent's involvement in a conflict-of-interest situation is remote or if the duties of the position are at such a level of responsibility that the submission of such sworn [disclosure] statement is not necessary because of the degree of supervision and review over the incumbent."

The County Attorney is required by the Ordinance to render advisory opinions "with respect to any matter . . . concerning the applicability" of the law, to investigate and process complaints of alleged violations and, in the event of a failure to comply, to seek from the circuit court a writ of

mandamus ordering the violator "to take such actions as will cure the violation." §§ 20A-7 and 20A-8. Upon issuance of a writ of mandamus, the County Director of Finance or other payroll disbursing officer is directed to suspend the violator's salary, pending full compliance with the Ordinance.

On July 29, 1974, a Bill of Complaint for Declaratory Judgment and Injunctive Relief was filed against the County and various of its officials by seventeen County employees who were required to file the financial disclosure statements mandated by the Ordinance; they were joined in the suit by the spouses of two of the complaining employees. The bill alleged in forty-five particulars that the Ordinance was unconstitutional and void on its face because it conflicted with, or was violative of, numerous provisions of the Federal and State Constitutions, the Maryland Declaration of Rights, the Montgomery County Charter, and specified public general laws of the State. No evidence was introduced and both parties moved for summary judgment. On October 10, 1974, the court declared the Ordinance unconstitutional and null and void in its entirety and granted summary judgment accordingly.

## (1)

### *Conflict between the Ordinance and the State Act.*

The lower court concluded that the Ordinance conflicted with § 29-10 of the State Act because it does not contain, as mandated by that section, "standards and requirements" which are "substantially those required [by the State Act] for State officials and candidates." The court held that under the purpose clause of the State Act, disclosure requirements are imposed only upon "public officers" or "public officials," and that the provisions of the Ordinance, expressly enacted to implement the State Act, cannot lawfully be applied to persons like the complaining County employees who do not hold any "office." Additionally, the court said:

"... the State law is more limited in scope than Chapter 20A. Its coverage is more restrictive and

its requirements concerning disclosure are fewer. The Court therefore finds that Chapter 20A is invalid and void because it does not set forth standards and requirements which are 'substantially' those required by the State law."

Section 29-10 of the State Act, as originally proposed, merely "empowered" counties to enact public financial disclosure requirements; as finally enacted, § 29-10 "hereby directed" the counties to "enact public financial disclosure requirements . . . the standards and requirements of which must be substantially those required by . . . [the State Act]." That section also provides that "the express powers contained and enumerated in Articles 23A, 25A and 25B of the . . . [Maryland] Code . . . are intended and shall be deemed to incorporate and include the power and authority contained in this section."

Nothing in the State Act compels the conclusion that it was intended to be limited in application to persons who, in a strict legal sense, hold "public office"; indeed, § 29-11 expressly provides to the contrary and indicates a legislative intention to cover a broad range of governmental officials and employees who exercise significant governmental authority, whether they be elected or appointed. *See* 58 Op. Att'y Gen. 343 (1973). We think the provisions of § 29-10 plainly constitute a legislative mandate that the counties shall enact public disclosure laws which, at a minimum, contain standards and requirements substantially like those imposed by the State Act.[2] Persons other than public officers and officials are covered under both the State Act and the Ordinance, and although there are some differences in the quantum and manner of disclosure required by the two laws, we think the Ordinance does contain public financial disclosure standards and requirements which, in the sense contemplated by the legislature, are "substantially" those required by the State Act for State officials and candidates. Accordingly, we hold that the lower

---

2. The Attorney General has ruled, we think erroneously, that the provisions of § 29-10 are merely directory. *See* 59 Op. Att'y Gen. 74-2 (1974).

court erred in finding that the Ordinance was void because it was in conflict with the State Act. *See County Council for Montgomery County v. Montgomery Association, Inc.,* 264 Md. 52, 333 A. 2d 596 (1975).

## (2)

### *The Constitutional Right to Privacy.*

The lower court found that the Ordinance "unduly intrudes into the rights of privacy of County employees, their spouses and children, by requiring the disclosure of relevant and irrelevant private financial affairs and is not limited to only such disclosure regarding holdings as might be affected by duties of a particular public office or employment." The court said:

> "The financial disclosure requirements of Chapter 20A before this Court encompass indiscriminately persons holding employment for Montgomery County and its offices, agencies and departments, regardless of the nature or scope of activity of such offices, agencies, and departments. The defendant County Council made no effort to relate the disclosure to financial dealings or assets which might be expected to give rise to a conflict of interest; that is, to such dealings which might have some rational connection with or bearing upon, or which might be affected by, the functions, duties, responsibilities or jurisdictions of any particular employee."

Finding that the restrictions in the Ordinance were broader than those reasonably required to effectuate its purpose, the court held that it violated the 1st, 4th, 9th and 14th amendments to the federal constitution and Articles 2, 7, 8, 19, 23, 35, 40, and 45 of the Maryland Declaration of Rights. In so concluding, the court relied upon Supreme Court cases recognizing a constitutional right of privacy, *Roe v. Wade,* 410 U. S. 113, 93 S. Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut,* 381 U. S. 479, 85 S. Ct. 1678, 14 L.Ed.2d 510

(1965), the decision of the Supreme Court of California in *City of Carmel-by-the-Sea v. Young*, 2 Cal. 3d 259, 85 Cal. Rptr. 1, 466 P. 2d 225 (1970), and Maryland cases recognizing invasion of privacy as a tort, *Beane v. McMullen*, 265 Md. 585, 291 A. 2d 37 (1972); *Carr v. Watkins*, 227 Md. 578, 177 A. 2d 841 (1962). To override an infringement of this right of privacy, the court said that the County had to demonstrate a compelling interest, show that its financial disclosure Ordinance was "necessary and not merely rationally related to, the accomplishment of permissible [County] policy," and prove that this policy could not be achieved by alternative and narrower means. *See Shelton v. Tucker*, 364 U. S. 479, 81 S. Ct. 247, 5 L.Ed.2d 231 (1960). After examining various provisions of the Ordinance, the court, relying primarily on the latter ground, struck down the Ordinance as violative of the constitutional right of privacy.[3]

It is, of course, no longer open to question that the right of privacy is protected by the federal constitution and that where the right is applicable, regulation limiting it must be justified by a "compelling state interest." *Doe v. Commander*, 273 Md. 262, 329 A. 2d 35 (1974). The Supreme Court emphasized in *Roe v. Wade, supra*, 410 U. S. at 152, however, that only personal rights that can be deemed "fundamental" or "implicit in the concept of ordered liberty" are included in the constitutional guarantee of personal privacy. Stated another way, "[i]f the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted

---

3. Among the suggestions made by the court to narrow the statute were: (1) relate employee coverage to the nature or scope of activity of County offices, agencies and departments; (2) relate disclosure to financial dealings or assets which might be expected to give rise to a conflict of interest; (3) do not require disclosure of the financial interest of spouse and children; (4) limit real property interests required to be disclosed to a narrower geographic area; (5) do not require disclosure of all interests in business entities or professions; (6) confine income disclosure to its source and not to amounts; (7) limit reporting of gifts or interest in offices and directorships to the official, not his family; (8) do not require a list of family members employed by the County; (9) require only present liabilities and not any liability for any period of time during the period covered by the statement; and (10) limit the provision providing for public disclosure of financial statements.

governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Eisenstadt v. Baird*, 405 U. S. 438, 453, 92 S. Ct. 1029, 1038, 31 L.Ed.2d 349, 362 (1972). If these pronouncements hint that the constitutional right of privacy is of limited scope and not to be lightly applied, *Paris Adult Theatre I v. Slaton*, 413 U. S. 49, 93 S. Ct. 2628, 37 L.Ed.2d 446 (1973), makes it explicit. In that case, the Court referred to the right of privacy, as developed in *Griswold* and *Wade*, as the "right to intimacy" and said that "[t]his privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing." 413 U. S. at 65-66. It is thus clear that the Supreme Court has yet to extend the right to privacy much beyond the context of intimate relationships. It is not, therefore, coextensive with every intrusion actionable under the tort of invasion of privacy, nor does it protect rights merely "important" and not "fundamental." *Cf. San Antonio Independent School District v. Rodriguez*, 411 U. S. 1, 93 S. Ct. 1278, 36 L.Ed.2d 16 (1973). That protecting the confidentiality of individual financial matters is important cannot be doubted; that it is a "fundamental" right "implicit in the concept of ordered liberty" is anything but certain. Thus, in *Illinois State Employees Association v. Walker*, 57 Ill. 2d 512, 315 N.E.2d 9 (1974), *Cert. den. sub. nom., Troopers Lodge No. 41 v. Walker*, 419 U. S. 1058, 95 S. Ct. 642, 42 L.Ed.2d 656 (1974), a case involving the constitutionality of financial disclosure requirements in Illinois, the Supreme Court of that state rejected the contention that employees' rights to privacy were implicated, saying:

"They [the employees] argue: 'If, in *Griswold*, the State could not invade the zone of privacy that a married couple may enjoy on top of the mattress, we might well question what right the State has to invade the zone of privacy that a married couple might enjoy in what they have tucked inside the mattress.' In our opinion this argument debases the

> *Griswold* opinion, and we find it completely unacceptable. We do not deal in this case with the most intimate relationships of husband and wife or with an effort by the State to control their decisions as to whether and when to have their children. We deal rather with a requirement that the financial affairs of persons who are paid by the public and who occupy positions of high public trust be disclosed."

315 N.E.2d at 16.[4]

But even if an individual has legitimate expectations of privacy of his personal finances, *California Bankers Association v. Shultz*, 416 U. S. 21, 94 S. Ct. 1494, 39 L.Ed.2d 812 (1974) (concurring opinion of Justices Powell and Blackmun), we think the County Ordinance facially demonstrates a compelling interest necessary to the accomplishment of County policy to which is subordinated any resulting infringement on the right of privacy. The State Act and Ordinance have a common purpose — to assure that citizens maintain the highest trust and confidence in their public officials. These laws are concerned not just with actual conflicts of financial interest, but also with appearances.[5] More than a mere collection of prohibitions aimed solely at public officials, such legislation seeks to foster a climate of honesty perceptible by the public at large. It can hardly be denied that the County has a compelling interest, on behalf of its citizens, in ensuring that

---

**4.** The lower court attempted to distinguish *Walker*, which involved an executive order requiring more detailed disclosure than the Ordinance, on the basis of an Illinois constitutional provision sanctioning financial disclosure. But such a distinction is without a federal constitutional difference. *See* Reitman v. Mulkey, 387 U. S. 369, 87 S. Ct. 1627, 18 L.Ed.2d 830 (1967).

**5.** In United States Civil Service Commission v. National Association of Letter Carriers, 413 U. S. 548, 93 S. Ct. 2880, 37 L.Ed.2d 796 (1973), the Supreme Court said:

"... it is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative Government is not to be eroded to a disastrous extent."
413 U. S. at 565.

its public officials and employees act with honesty, integrity, and impartiality in all their dealings, and that their private financial holdings and transactions present no conflict of interest between the public trust and private interests. For these reasons, it is readily apparent, as stated by Mr. Justice Douglas, who authored *Griswold* for the Court, that the County has "an undeniably strong interest in placing beyond question the integrity of its public service." *Troopers Lodge No. 41 v. Walker, supra,* 95 S. Ct. at 643 (concurring in denial of certiorari).

In the first of five decided cases dealing with the constitutionality of public financial disclosure laws, the court in *City of Carmel-by-the-Sea v. Young, supra,* struck down a statute on the ground that it constituted an overbroad intrusion into the private financial affairs of persons seeking to hold, or holding, public office. The court's major objection to the statute was that "[n]o effort is made to relate the disclosure to financial dealings or assets which might be expected to give rise to a conflict of interest." 466 P. 2d at 232. The court noted, however, that the legislature, in a properly drawn statute, could constitutionally require "a broad disclosure of assets, income or receipts relevant to the duties and functions of a public officer or employee." 466 P. 2d at 234.

In *Stein v. Howlett,* 52 Ill. 2d 570, 289 N.E.2d 409 (1972), *appeal dismissed,* 412 U. S. 925, 93 S. Ct. 2750, 37 L.Ed.2d 152 (1973), it was held that a statute requiring public officials to publicly disclose various business connections and interests was not overbroad as an unconstitutional invasion of privacy; the court there found that the statute promoted a compelling governmental interest which was paramount to the rights of the individual. In *Fritz v. Gorton,* 83 Wash. 2d 275, 517 P. 2d 911, *appeal dismissed,* 417 U. S. 902, 94 S. Ct. 2596, 41 L.Ed.2d 208 (1974), a statute requiring detailed public disclosure of the financial affairs of elected officials was found to promote a compelling state interest and not to constitute an unwarranted intrusion into the privacy of candidates or public officeholders. The court there noted:

"... The right of the electorate to know most certainly is no less fundamental than the right of privacy. When the right of the people to be informed does not intrude upon intimate personal matters which are unrelated to fitness for public office ... [citing *Griswold v. Connecticut, supra*], the candidate or office holder may not complain that his own privacy is paramount to the interests of the people."
517 P. 2d at 925.

In *Illinois State Employees Association v. Walker, supra,* no constitutional deprivation of the right of privacy was found to exist by reason of a governor's executive order compelling designated state employees to make a detailed financial disclosure, which included filing their income tax returns with their disclosure statements.

In *County of Nevada v. MacMillen,* 11 Cal. 3d 662, 114 Cal. Rptr. 345, 522 P. 2d 1345 (1974), the Supreme Court of California, revisiting the ground it had originally tested in *City of Carmel,* was called upon to review a new conflict of interest and financial disclosure law covering both elected and appointed officials and requiring detailed disclosure of many financial interests. The court found that the new law "seems specially tailored to meet and satisfy the primary concerns of our *Carmel* ruling"; that it "appears to accomplish its legitimate aims in a less intrusive, and considerably more limited, fashion"; and that it "contains sufficient assurances [on its face] that unnecessary intrusions into personal privacy will not occur." 114 Cal. Rptr. at 349-50. Citing *Fritz* and *Stein,* the court said: "These cases support our view that neither the right to privacy, nor the right to seek and hold public office, must inevitably prevail over the right of the public to an honest and impartial government." 114 Cal. Rptr. at 351.

While the facts and regulatory schemes involved in each of these cases differed among themselves, and also differ from those in the Ordinance now before us, our review of the purpose and provisions of the Ordinance, in light of the

cases, convinces us that the constitutional right of privacy here asserted is without application in the circumstances of this case. We think it plain that to limit disclosure requirements to financial information that on its face relates to County activities or to the functions and duties of a particular official or employee would not guarantee the absence of financial conflicts of interest. In this connection, we note what the court in *Stein v. Howlett, supra,* said:

"[T]he plaintiff questions how the disclosure of a business connection, unrelated to any activity of the State serves to avoid the conflicts of interest hoped to be disclosed and obviated by the statute. We acknowledge that the disclosure of a business connection which is truly unrelated to any State activity cannot help to achieve the desired purpose. But who is to say whether or not there is a business connection or relation with the State? Who is to say that the business within the State which does not do business directiy with the State, but which supplies another company which does, has no connection with the State? Who is to say that a capital gain from the sale of an asset to a stockholder of a company doing business with the State has no connection with the position of the public official?"
289 N.E.2d at 413.

In a similar vein, the court in *Fritz v. Gorton, supra,* said:

"It would be, however, an insurmountable legislative task to tailor disclosures to each of literally a myriad of public posts, and an anomaly to require each individual to make a personal determination as to what items of his financial affairs would be relevant."
517 P. 2d at 926.

That the Ordinance compels a degree of disclosure by spouses and children of the official or employee does not mean that the law is fatally overbroad. Similar disclosures

were involved in *Stein, Fritz,* and *Walker.* As the court in *County of Nevada v. MacMillen, supra,* observed:

> "Although the 1973 act may to some extent invade the privacy of the official's spouse or dependent children, we think the public's interest in an honest and impartial government outweighs the interests of such persons in maintaining complete privacy in their financial affairs."
> 114 Cal. Rptr. at 353 n. 10.

With regard to disclosure by spouses and children, the County makes this forceful observation:

> "The requirement is neither novel nor unreasonable. Men have been known to conceal their assets by placing title thereto in the name of their wives, sons, or brothers; and it is merely common sense to realize that an official may act to enhance the financial interests of his family members, even if he exercises no direct control over them. Excluding such interests from disclosure, then, would not ensure the official's integrity and impartiality or the public's confidence therein. One does not have to assume — as the trial court suggested that the framers of Chapter 20A did — that all county employees and their spouses and children 'are crooks,' in order to find a rational connection between the requirement for disclosure of family members' assets and income and assuring the public that an employee is free from potential conflicts of interest in the performance of his duties."

We conclude that the disclosure provisions of the Ordinance, although broad, are drawn to achieve a legitimate objective and do not sweep unnecessarily broadly into the area of protected freedoms. In a case involving a statute prohibiting state employees from seeking political office or taking part in the affairs of a political party or in a

political campaign, the Supreme Court responded to a claim that the provisions were overbroad by stating:

"[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. It is our view that . . . [the statute] is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Broadrick v. Oklahoma*, 413 U. S. 601, 615-16, 93 S. Ct. 2908, 2918, 37 L.Ed.2d 830, 842 (1973).

In holding that the provisions of the Ordinance do not go beyond what may properly be deemed necessary to achieve the County's goal, we point out that the wisdom of imposing such financial disclosure requirements is a matter for legislative, not judicial, judgment. "To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference. The problems of government are practical ones and may justify, if they do not require, rough accommodations, — illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago*, 228 U. S. 61, 69-70, 33 S. Ct. 441, 443, 57 L. Ed. 730, 734 (1913). In other words, if legislation is constitutional, the wisdom of it is beyond the purview of the courts. *In re Trader*, 272 Md. 364, 325 A. 2d 398 (1974).

(3)

*The Constitutional Right to Hold Public Employment.*

In holding that the Ordinance invaded the rights of County employees to hold their employment in violation of the 1st, 4th, 5th, 9th and 14th amendments to the federal constitution and Articles 2, 7, 8, 19, 23, 35, 40 and 45 of the Maryland Declaration of Rights, the lower court relied upon a number of cases holding that a public employee cannot be removed from his employment for reasons that contravene due process *e.g., Cramp v. Board of Public Instruction*, 368

U. S. 278, 82 S. Ct. 275, 7 L.Ed.2d 285 (1961). From averments made in the bill of complaint that the Ordinance may drive some employees from their jobs, the court concluded that forced financial disclosure "constitutes a form of involuntary discharge, or constructive discharge without due process of law."

While it is true that government employment may not be denied on the basis of invidiously discriminatory criteria, *Sugarman v. Dougall*, 413 U. S. 634, 93 S. Ct. 2842, 37 L.Ed.2d 853 (1973); that government employees retain their first amendment rights to speech and assembly, *Pickering v. Board of Education*, 391 U. S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968); and that public employees may not, in some instances, be deprived of their employment without procedural due process, *Perry v. Sindermann*, 408 U. S. 593, 92 S. Ct. 2694, 33 L.Ed.2d 570 (1972), there is no constitutional right to public employment as such which will be protected against infringement on its own account apart from violation of other constitutional rights. Nothing in the provisions of the Ordinance now before us prohibits persons from holding public employment. If a County employee fails to comply with the disclosure provisions of the Ordinance, and if the County Attorney thereby takes action against him, and if a court issues the appropriate writ, the employee's salary will be suspended pending compliance with the requirements imposed by the Ordinance, and he may be subjected to existing personnel disciplinary rules. That an employee may choose to resign rather than make a public disclosure of his finances does not mean that he is being unconstitutionally excluded from public employment. Where, as here, the Ordinance promotes a compelling state interest, and is not substantially overbroad, no unconstitutional or impermissible infringement upon any constitutional right of the complaining employees is involved. The cases so hold. See *Fritz v. Gorton, supra; Stein v. Howlett, supra; County of Nevada v. MacMillen, supra.* Compare *Broadrick v. Oklahoma, supra* and *United States Civil Service Commission v. National Association of Letter Carriers, supra.*

(4)

*Due Process of Law — The Void for Vagueness Doctrine.*

The lower court found that the Ordinance was "replete with phrases and words that have no common meaning to men of reason" and that it was therefore "so vague and indefinite that it is a violation of the due process provisions of the Federal and State Constitutions." It held that "[t]his unconstitutional vagueness is so pervasive that the severability [clause] in Section 11 of [Chapter] 20A cannot save the Act." In so concluding, the lower court focused on four specific provisions of the Ordinance:

(1) § 20A-3(b)(11) requiring that financial disclosure statements be filed by County employees in decision-making jobs; [6]

(2) § 20A-3(d) exempting certain officials within a designated class from disclosure, but not specifically setting out who will grant the exemption;

(3) § 20A-5 requiring a valuation to be placed on real and personal property without specifying the method of valuation, *e.g.*, market value, purchase price, etc.;

(4) §§ 20A-1 and 20A-10 requiring "public officials" to file financial statements, without defining that term.

---

**6.** This section, with certain exceptions, requires that statements be filed by:

"... all employees of the County who are responsible for making governmental decisions or taking governmental action or recommending any such decision or action with regard to:

(a) Contracting or procurements;

(b) Administering or monitoring grants or subsidies;

(c) Planning or zoning;

(d) Inspecting, licensing, regulating or auditing any non-governmental enterprise; and,

(e) Other activities where the decision or action has an economic impact on the interests of any non-governmental enterprise."

It is true, of course, that a statute which requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. *Connally v. General Construction Co.*, 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322 (1926). Recognizing that "there are limitations in the English language with respect to being both specific and manageably brief" and that statutory language "may not satisfy those intent on finding fault at any cost," the Supreme Court recently restated the standard for vagueness by saying: the statute must be "set out in terms the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *United States Civil Service Commission v. National Association of Letter Carriers, supra,* 413 U. S. at 578-79.

Measured by these tests, we think the lower court was plainly wrong in holding that the Ordinance was void for vagueness. The Ordinance makes provision for a procedure whereby persons in doubt about its application in particular situations may obtain a ruling from the County Attorney, the officer primarily responsible for its enforcement. The County Attorney is required by the Ordinance to issue advisory opinions with respect to any matter involving its applicability, and he is responsible for determining exemptions under § 20A-3 (d), and resolving uncertainties that might arise under § 20A-3 (b) (11).[7] As to the valuation provisions of § 20A-5, the County Executive is authorized to adopt rules and regulations to implement the Ordinance; in the absence of such regulations, we think any reasonable good faith attempt at a fair market valuation will satisfy the plain intention of the County Council in enacting the

---

7. In the *Letter Carriers* case, the Supreme Court rejected a vagueness contention aimed at the Hatch Act in part for the following reason:

"It is also important in this respect that the Commission has established a procedure by which an employee in doubt about the validity of a proposed course of conduct may seek and obtain advice from the Commission and thereby remove any doubt there may be as to the meaning of the law, at least insofar as the Commission itself is concerned."
413 U. S. at 580.

Ordinance. We also think that the provisions of § 20A-3 sufficiently identify those persons required to file financial statements under the Ordinance and that no further definition of "local official" is required.

### (5)

### Delegation of Legislative Powers.

The lower court held that certain provisions of the Ordinance were unconstitutional since they constituted an unlawful delegation of legislative powers to administrative officers without proper guidelines and standards, viz.:

(1) 20A-3(c) which requires that financial disclosure statements be filed by officials designated by the County Executive or County Council "as might be desirable to promote the trust and confidence of the citizens of the County in the . . . County government";

(2) § 20A-4(i) which directs the County's Chief Administrative Officer to provide forms for filing statements;

(3) § 20A-8(e) which directs the County Director of Finance to "suspend payment of any salary or other compensation" to a person against whom the Circuit Court for Montgomery County issues a writ of mandamus to compel compliance with the Ordinance; and

(4) § 20A-9 which delegates to the County Executive "the power to adopt reasonable and necessary rules and regulations for the implementation and administration of this Chapter."

We said in *Pressman v. Barnes,* 209 Md. 544, 555, 121 A. 2d 816, 822 (1956):

"Generally, a statute or ordinance vesting discretion in administrative officials without fixing any standards for their guidance is an unconstitutional delegation of legislative power.

But we also hold, as a qualification of the general rule, that where the discretion to be exercised relates to police regulations for the protection of public morals, health, safety, or general welfare, and it is impracticable to fix standards without destroying the flexibility necessary to enable the administrative officials to carry out the legislative will, legislation delegating such discretion without such restrictions may be valid. [citations omitted] It is recognized that it would not always be possible for Legislature or City Council to deal directly with the multitude of details in the complex situations upon which it operates. *Comptroller of Treasury v. M. E. Rockhill, Inc.*, 205 Md. 226, 232, 107 A. 2d 93. The modern tendency of the courts is toward greater liberality in permitting grants of discretion to administrative officials in order to facilitate the administration of the laws as the complexity of governmental and economic conditions increases."

To the same effect, *see County Council v. Investors Funding*, 270 Md. 403, 312 A. 2d 225 (1973); *Davis v. Montgomery County*, 267 Md. 456, 298 A. 2d 178 (1972); *Gino's v. Baltimore City*, 250 Md. 621, 244 A. 2d 218 (1968); *Matthaei v. Housing Authority*, 177 Md. 506, 9 A. 2d 835 (1939).

We think the powers delegated to County officials are well within the rule of the cases and accordingly we hold that the lower court erred in finding an unlawful delegation of legislative powers to County Officials. *See* L. Cohen, *Some Aspects of Maryland Administrative Law*, 24 Md. L. Rev. 1 (1964).

(6)

*Equal Protection of the Law.*

The lower court held two provisions of the Ordinance violative of the equal protection clause of the 14th Amendment as creating classifications lacking a rational basis for the achievement of the objectives of the Ordinance, viz., (1) § 20A-4 (f) which renders confidential those

statements filed by certain employees of the County, the County Board of Education and Montgomery Community College, but not those statements filed by other officials and (2) § 20A-3 (b)(10) which excludes paid members of boards, commissions and committees appointed prior to the effective date of the law from coverage under the Ordinance. We think the lower court erred in so concluding.

The constitutional safeguard of the equal protection clause is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. *McGowan v. Maryland,* 366 U. S. 420, 81 S. Ct. 1101, 6 L.Ed.2d 393 (1961). With respect to the provision that the financial disclosure statements of certain officials would be public while those of others would remain confidential, we agree with the County that its legislative body could rationally conclude that, with respect to certain positions, the public's interest in knowing that its employees are not involved in conflicts of interest outweighs the employees' interest in privacy to an extent that warrants public disclosure; whereas, with respect to certain other positions, the public's need to know the details of the employees' financial circumstances is somewhat less compelling, and thus the proper balance between the relevant interests of the public and those of the employees justifies confidential filing. The line drawn by the County Council in this respect in the Ordinance is essentially between elected officials, attorneys, and high level public officers and employees, whose statements are public, and persons whose duties touch upon procurement and similar matters in which conflicts of interest can be an important problem, but whose activities in general are subject to a fair amount of supervision. We think the line drawn by the County does not offend against the equal protection clause. *See Broadrick v. Oklahoma, supra,* 413 U. S. at 607, note 5.

In providing that persons who accepted paid appointments to County boards and commissions at a time when financial disclosure of the kind required by the Ordinance was not a condition of holding the position may complete their terms of office without filing statements, the County Council could

rationally conclude that the need for disclosure was greater in the case of elected officials and employees for whom no such "grandfather" arrangement was provided. We think the different treatment of these groups holding public positions is not irrational and accordingly is not vulnerable to attack on equal protection grounds. *See San Antonio Independent School District v. Rodriguez, supra.*

(7)

*Alleged Violations of Montgomery County Charter and Code of Professional Responsibility.*

The lower court held that §§ 20A-7 and 20A-8 of the Ordinance constituted "an unlawful and ultra vires delegation of authority, duties and powers of the County Attorney in violation of the provisions of Section 213 of the Montgomery County Charter.[8]

As heretofore indicated, these sections of the Ordinance assign the County Attorney the functions of issuing advisory opinions concerning the applicability of the Ordinance to a County employee who requests such advice; investigating and reporting complaints of alleged violations; and seeking the appropriate court or administrative remedy where there is a failure to comply with the provisions of the Ordinance. The lower court was of the opinion that because § 213 of the Charter did not specifically include the functions assigned to the County Attorney by §§ 20A-7 and 20A-8, these sections were *ultra vires* the Charter. The court stated that as the previous County Charter has assigned the County Attorney "[s]uch other functions as may be provided by law or assigned to him by the county council," but the present Charter contained no such provision, the present Charter intended that the County Attorney perform "only those

---

8. Section 213 provides:

"The county attorney shall be the chief legal officer of the county, conduct all the law business of the county, and be the legal advisor to the council, the county executive and all departments or other instrumentalities of the county government, and he shall represent the county in all actions in which the county is a party."

limited duties, powers and functions and exercise authority specifically granted in Section 213 of the . . . Charter."

We hold that the lower court was in error in so deciding. Section 213 of the Charter provides that the County Attorney shall be "the chief legal officer of the county" entrusted with the responsibility of conducting "all the law business of the county." Maryland Code (1973 Repl. Vol.) Art. 25A, § 5 (Q) authorizes the County to "enact local laws . . . to govern the conduct and actions of all . . . county officers in the performance of their public duties . . ."; and § 5 (S) permits the County to enact all such ordinances "as may be deemed expedient in maintaining the . . . good government . . . of the county." These provisions, along with the power conferred on the County by § 29-10 of the State Act to enact a local financial disclosure law, plainly authorized the County Council to invest the County Attorney with the duties imposed upon him by §§ 20A-7 and 20A-8 of the Ordinance.[9]

The lower court was also in error in concluding that the responsibilities imposed upon the County Attorney by the Ordinance conflicted with three disciplinary rules of the Code of Professional Responsibility (Md. Rules, Appendix F), viz., DR 4-101 (B), requiring an attorney to preserve confidences and secrets of a client; DR 5-101 (B) restricting the occasions when an attorney may testify; and DR 7-101 (A)(3) generally prohibiting an attorney from prejudicing or damaging his client during the course of the professional relationship. The lower court's holding was premised on the assumption that the County Attorney frequently represents County employees in judicial proceedings and renders legal advice to them and that § 20A-7 (d), pursuant to which the County Attorney renders advisory opinions, created an attorney-client relationship. Under § 213 of the Charter, the County and its instrumentalities are the County Attorney's

---

**9.** See Committee on Style, Charter Revision Commissions, *Commentary upon Proposed Charter, Montgomery County, Maryland* (May 21, 1968), at 22-23. The legislative history of the present Charter indicates that the Charter Commission intended no substantive changes in the duties of the County Attorney from those imposed upon him by the preceding Charter.

clients, not individual County employees. The County Attorney advises employees only insofar as their interests coincide with those of the County. We, therefore, hold that nothing in the Code of Professional Responsibility inhibits the County Attorney from performing the duties imposed upon him under the Ordinance.

*Judgment reversed; respondents to pay costs.*