## Crisconi *v.* Shapp, et al.

276

Argued March 6, 1972, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Carter R. Buller,* with him *David W. Marston* and *William R. Dimeling,* and, of counsel, *Montgomery, McCracken, Walker & Rhoads,* for plaintiff.

*Harold E. Kohn,* Special Attorney, with him *Lawrence J. Beaser,* Deputy Attorney General, *David W. Hornbeck,* Special Assistant Attorney General, and *J. Shane Creamer,* Attorney General, for defendants, Shapp and Simpson.

*Jon R. Flicker,* for defendant, Cornell.

OPINION BY JUDGE KRAMER, April 17, 1972:

This case comes within the original jurisdiction of this Court. Suit was commenced by the filing of a Complaint, captioned as an action in both "Quo Warranto"* and in equity on November 14, 1971. The

---

* We recognize that under our recent ruling in the case of *Gernert v. Lindsay, et al.,* 2 Pa. Commonwealth Ct. 576, A. 2d

Complaint was filed by John P. Crisconi (Crisconi) who averred that on or about January 5, 1960, a former Governor of the Commonwealth appointed him to the position of Commissioner on the Delaware River Port Authority (Authority). His appointment was confirmed on January 25, 1960, for a five year term, ending January 25, 1965, and until his successor was appointed and qualified. From January 25, 1965, until July 9, 1968, Crisconi served as a holdover appointee until the latter date when he was confirmed for reappointment for a term ending January 25, 1970, and until his successor was appointed and qualified. On September 2, 1971, the Honorable Milton J. Shapp (Governor), Governor of the Commonwealth of Pennsylvania, sent to Crisconi a telegram notifying him of the termination of his duties as a Commissioner of the Authority. The telegram also notified Crisconi that his successor was being appointed "immediately." On the same date the Governor appointed Charles G. Simpson (Simpson) as the successor to Crisconi with a term expiring on January 25, 1975. On October 20, 1971, at a regular meeting of the Authority, the Chairman of the Authority refused to recognize Crisconi as a Commissioner, and recognized Simpson as the successor Commissioner. The appointment of Simpson was not submitted to the Senate of the Commonwealth of Pennsylvania for its consent.

Crisconi filed the above mentioned Complaint, naming as defendants, the Governor, Simpson and the Chairman of the Authority. The Complaint demanded that the Governor be enjoined from terminating the

---

(1971), mandamus is the proper action for contesting an unlawful ouster from office; however, this issue was not raised by the defendants in this case. By virtue of Section 503(a) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. (Act No. 223), 17 P.S. 211.503(a) and because of the importance of this case we will rule on the merits.

appointment of Crisconi as a Commissioner of the Authority, that the Chairman of the Authority be enjoined from refusing to recognize Crisconi as a Commissioner until Crisconi's successor has been appointed and qualified, and lastly that Simpson be enjoined from attempting to succeed Crisconi as a Commissioner until he had "qualified," i.e., until his appointment has been approved by two-thirds of the members elected to the Pennsylvania Senate. The defendants filed Preliminary Objections in the nature of a demurrer stating that the Complaint failed to set forth a cause of action, first, because Crisconi's appointment had been terminated by the Governor's telegram and therefore Crisconi had no standing to sue and, secondly, because Simpson's appointment was valid under the Pennsylvania Constitution and the Delaware River Port Authority Compact. (See Act of June 12, 1931, P. L. 575, as amended, 36 P.S. 3503 *et seq.*)

Accepting as true and correct all of the well-pleaded allegations of fact of the Complaint as we must, *McIlvaine v. State Police*, 3 Pa. Commonwealth Ct. 478, A. 2d (1971) and *Commonwealth v. Toro Dev. Co., et al.*, 2 Pa. Commonwealth Ct. 429, A. 2d (1971), nevertheless we will hold herein that the appointment of Simpson and the termination of Crisconi were proper under the Constitution of Pennsylvania and the Compact and therefore the Preliminary Objections of the defendants must be sustained.

The provisions of the Compact pertinent to the issues herein "have the force and effect of a statute of the Commonwealth of Pennsylvania" (Act of June 12, 1931, P. L. 575, Section 2, 36 P.S. 3504) and provide:

"Six of the eight commissioners for the Commonwealth of Pennsylvania shall be appointed by the Governor of Pennsylvania for terms of five years. The Auditor General and the State Treasurer of said Com-

monwealth shall, ex officio, be commissioners for said Commonwealth, each having the privilege of appointing a representative to serve in his place at any meeting of the commission which he does not attend personally.

"All commissioners shall continue to hold office after the expiration of the terms for which they are appointed or elected until their respective successors are appointed and qualify, but no period during which any commissioner shall hold over shall be deemed to be an extension of his term of office for the purpose of computing the date on which his successor's term expires." (35 P.S. 3503, Article II)

The pertinent provisions of the Pennsylvania Constitution relating to the Governor's power to appoint are found in Article IV, Section 8, which reads as follows:

"(a) The Governor shall appoint an Attorney General, a Superintendent of Public Instruction* and such other officers as he shall be *authorized by law* to appoint. The appointment of the Attorney General, the Superintendent of Public Instruction and of such other officers as may be *specified by law,* shall be subject to the consent of two-thirds of the members elected to the Senate. (Emphasis added)

"(b) Except as may now or hereafter be otherwise provided in this Constitution as to appellate and other judges, he may, during the recess of the Senate, fill vacancies happening in offices to which he appoints by granting commissions expiring at the end of its session and fill vacancies happening in the office of Auditor General or State Treasurer or in any other elective office he is authorized to fill. If the vacancy happens during the session of the Senate except as otherwise

---

* By the Act of July 23, 1969, P. L. 74, 71 P.S. 1037 *et seq.,* the Superintendent of Public Instruction is now also known as the Secretary of Education.

provided in this Constitution, he shall nominate to the Senate, before its final adjournment, a proper person to fill the vacancy. In the case of a vacancy in an elective office, a person shall be elected to the office on the next election day appropriate to the office unless the vacancy happens within two calendar months immediately preceding the election day, in which case the election shall be held on the second succeeding election day appropriate to the office.

"(c) In acting on executive nominations, the Senate shall sit with open doors. The votes shall be taken by yeas and nays and shall be entered on the journal."

In attempting to properly construe Article IV, Section 8, we look to the prior constitutional provisions under the Constitution of 1874, which provided, *inter alia,* that the Governor: ". . . shall nominate and, by and with the advice and consent of two-thirds of all the members of the Senate, appoint . . . such other officers of the Commonwealth as he is or may be authorized by the Constitution or by law to appoint; . . ." (Article IV, Section 8, 1874 Constitution)

It is clear to us that the adoption of Article IV, Section 8, as it presently reads, was for the purpose of eliminating the previously required senatorial approval of appointments by the Governor to *all* appointive offices to which the Governor could appoint under the Constitution or by statute. Senatorial approval is *now* necessary *only* in those instances where senatorial approval is *specifically* mandated by the Constitution or by statute.

A reading of the Compact indicates the existence of a distinction between the appointment procedures of the Commissioners utilized by the Commonwealth of Pennsylvania on the one hand and those utilized by the State of New Jersey on the other hand. The Compact indicates specifically the need for consent and approval

of the New Jersey Senate for the seating of the New Jersey Commissioners, but no such requirement is indicated in those portions of the Compact dealing with the appointment of Pennsylvania Commissioners. (35 P.S. 3503, Article II)

In view of the fact that we have ruled that the appointment of Simpson did not require the consent of the Pennsylvania Senate and therefore was a valid appointment it is not necessary for us to rule on the remaining issues, *i.e.,* the standing of Crisconi to sue, and the effectiveness of the notice of termination.

The only remaining point to be touched upon is the argument of Crisconi that the Administrative Code, Act of April 9, 1929, P. L. 177, Section 207, 71 P.S. 67, sets forth a specific requirement for the Governor to submit nominations for appointive offices to independent commissions to the Senate for its consent. That section in pertinent part reads as follows: "The Governor shall nominate and, by and with the advice and consent of two-thirds of all the members of the Senate, appoint: (a) The Secretary of the Commonwealth, the Attorney General, . . .* and the members of *all independent administrative boards and commissions.*" (Emphasis added.) Crisconi argues that the language of the Administrative Code, *supra,* includes this Authority as an independent board or commission; and therefore these Commissioners here in question are "such other officers as may be specified by law" as noted in Article IV, Section 8 of the Pennsylvania Constitution. We have searched the statutes to determine the legislative intent of the term "independent administrative boards and commissions." The closest reference to it which

---

* This omitted portion provides for senatorial approval of appointments to offices collectively and generally known as the Governor's cabinet. Subsections (b) and (c) of Section 207 cover departmental and advisory agencies respectively.

we can find is in Section 201 of the Administrative Code,** *supra*, 71 P.S. 61, where it is stated: "The executive and administrative work of this Commonwealth shall be performed by the Executive Department, . . .; by the following administrative department: . . .; and by the following *independent* administrative boards and commissions: Pennsylvania Game Commission, Pennsylvania Fish Commission, State Civil Service Commission, Pennsylvania Public Utility Commission, and the Pennsylvania Historical and Museum Commission." (Emphasis added.) Crisconi cites no authority supportive of his argument that this Authority comes within the definition of "independent administrative boards and commissions" and we can find none to support such a proposition. Without such authority we cannot hold, *as a matter of law* in ruling on Preliminary Objections, that this Authority is such an independent administrative commission as would bring it within the purview of Section 207 of the Administrative Code, *supra*, and Article IV, Section 8, of the Pennsylvania Constitution.

Because of the importance of the question presented to us, a search of the law was made to attempt further to determine the legislative intent. We analyzed the legislative language used in statutes creating other boards, commissions and agencies. As already noted, the Administrative Code, *supra*, in Section 201, 71 P.S. 61, specifically sets forth five (noted above) independent administrative boards and commissions. Appointment to these would require senatorial approval. The

---

** It is significant that in the original Act of 1929 the Legislature set forth three agencies under a separate article heading "III. ORGANIZATION OF INDEPENDENT ADMINISTRATIVE BOARDS AND COMMISSIONS." Later, by amendment, the Historical and Museum Commission was added, and by virtue of another statute (71 P.S. 61) the State Civil Service Commission was included.

Administrative Code in Sections 202 and 203, 71 P.S. 62 and 63, sets forth one hundred and thirty departmental administrative boards, commissions and offices, and sixteen advisory boards and commissions; but no mention is made on appointments in these sections.* In addition, we find the following inter-state compacts in the Pennsylvania statutes, and note that each specifically requires Senate approval:

    1. Atlantic Marine Fisheries Commission (30 P.S. 412)

    2. Ohio River Valley Sanitation Commission (32 P.S. 816.2)

    3. Great Lakes Commission (32 P.S. 817.2)

    4. Delaware Valley Regional Planning Commission (73 P.S. 701)

Our search of Pennsylvania statutes disclosed additional agencies which are not included within the Administrative Code, *supra*, in which there are specific provisions in the statutes requiring Senate confirmation. These are:

    1. Advisory Committee on Probation (61 P.S. §331.16a)

    2. Air Pollution Commission (35 P.S. §4005(a))

    3. Commonwealth Trustees, Temple University— of the Commonwealth System of Higher Education (24 P.S. §2510-4)

    4. Commonwealth Trustees, University of Pittsburgh—of the Commonwealth System of Higher Education (24 P.S. §2510-204)

    5. Milk Marketing Board (31 P.S. 700j-201)

    6. Minor Judiciary Education Board (42 P.S. §1213)

---

\* Appointments to these offices are covered by the provisions of subsections (b) and (c) of Section 207 of the Act, *supra*, 71 P.S. 67.

7. Pennsylvania Board of Probation and Parole (61 P.S. §331.2)

8. Pennsylvania Council on the Arts (71 P.S. §1530.1) .

9. Pennsylvania Drug, Device and Cosmetic Board (35 P.S. §780-19)

10. Pennsylvania Human Relations Commission (43 P.S. §956)  .   .

11. Pennsylvania Industrial Development Authority (73 P.S. §304)

12. Pennsylvania Liquor Control Board (47 P.S. §2-201)

13. Pennsylvania Parkway Commission (36 P.S. §655.5)

14. Pennsylvania Public Television Network Commission (71 P.S. §1188.2)

15. Pennsylvania Turnpike Commission (36 P.S. §652d)

16. Renal Disease Advisory Board (35 P.S. §6204)

17. State Harness Racing Commission (15 P.S. §2601)

18. State Horse Racing Commission (15 P.S. §2651)

19. State Lottery Commission (72 P.S. 3761.4)

20. Weather Modification Board (3 P.S. §1103)

There are at least thirty agencies, not included in the Administrative Code, *supra,* in which the appointment of the members is not subject to any statutory requirement of Senate approval. They are as follows:

1. Advisory Board for Boating (55 P.S. §483.2)

2. Advisory Board (under Penna. Prevailing Wage Act) (43 P.S. §165-2.1)

3. Appeals Board (under Penna. Prevailing Wage Act) (43 P.S. §165-2.2)

4. Advisory Committee on Atomic Energy Development and Radiation Control (73 P.S. §1101)

5. Advisory Committee on Solid Waste Management (35 P.S. §6004)

6. Advisory Committee to State Board of Education (24 P.S. 7-735)

7. Advisory Council on Library Development (24 P.S. §4203)

8. Banking Board (71 P.S. §733-501)

9. Bicentennial Commission of Pennsylvania (71 P.S. §1047.13)

10. Board of Arbitration of Claims (72 P.S. §4651-1)

11. Brandywine Battlefield Park Commission (32 P.S. §1181)

12. Commission on Charitable Organizations (10 P.S. §160-5)

13. Delaware River Joint Toll Bridge Commission (36 P.S. §3272)

14. General State Authority (71 P.S. §1707.3)

15. Juvenile Court Judges' Commission (11 P.S. §270-2)

16. Local Government Records Committee (53 P.S. §9005)

17. Municipal Employes' Retirement Board (one member appointed by Governor) (53 P.S. §673)

18. Pennsylvania Higher Education Assistance Agency (24 P.S. §5103)

19. Pennsylvania Housing Agency (35 P.S. §1680.202)

20. Pennsylvania Parent Assistance Authority (24 P.S. 5704)

21. Regional Air Pollution Control Associations (35 P.S. §4006)

22. Savings Association Board (15 P.S. §6403)

23. State Advisory Council (on unemployment compensation) (43 P.S. §764)

24. State Apprenticeship and Training Council (43 P.S. §90.3)

25.    State Board for Certification of Sewage Treatment Plant and Waterworks Operators (63 P.S. §1003)

26.    State Board of Vocational Rehabilitation (43 P.S. §681.2)

27.    State Council of Civil Defense (71 P.S. §1689.3)

28.    State Highway and Bridge Authority (36 P.S. §3603)

29.    State Soil and Water Conservation Commission (3 P.S. §852)

30.    State Tax Equalization Board (72 P.S. §4656.2)

In addition, we found three other interstate compacts under statutes where the appointment of Pennsylvania members was not subject to Senate approval. They are:

1.    Interstate Commission for the Potomac (32 P.S. §741)

2.    Interstate Compact Commission for Education (24 P.S. §5403)

3.    Wheeling Creek Water Shed Protection and Flood Prevention Commission (32 P.S. 819.2)

The membership of the Susquehanna River Basin Commission consists of the Governor, or his designee, for each signatory State, and one member appointed by the President of the United States (32 P.S. 820.1). Therefore this last named commission is not relevant to the matters before the Court in this case.

It appears clear to us, then, that the General Assembly of Pennsylvania has for reasons of its own treated governmental agencies differently, and it must be presumed that when the General Assembly intends to make appointments by the Governor subject to the consent of the Pennsylvania Senate, the General Assembly clearly sets forth this requirement in the statute.  In this case, we rule, as a matter of law, that under the provisions of Article IV, Section 8, of the Pennsylvania

Constitution, if the statutory provisions creating and organizing a specific agency are silent on a requirement that the Governor must obtain Senate approval or consent, and the agency appointments are not otherwise covered by another statute, such appointments do not require the consent or approval of the Senate.

In view of our holding that the Governor's appointment of Simpson did not constitutionally require the consent of the Senate and was otherwise validly made, we

### ORDER

AND Now, this 17th day of April, 1972, the Preliminary Objections of the defendants are hereby sustained, and it is ordered that the Complaint of John P. Crisconi is hereby dismissed.

Judge MENCER concurs in the result of this opinion only.