JAMES T. EVANS et al., Respondents, v HUGH L. CAREY, as Governor of the State of New York, et al., Appellants.

Fourth Department, July 2, 1976

*Louis J. Lefkowitz, Attorney-General (Michael Colligan, Ruth Kessler Toch* and *James E. Morgan* of counsel), for appellants.

*Kavinoky, Cook, Hepp, Sandler, Gardner & Wisbaum (Charles Sandler* and *Ronald L. Jaros* of counsel), for respondents.

MARSH, P. J. Defendants appeal from a judgment and amended judgment of Supreme Court, Erie County, which granted injunctive relief and declared Executive Order No. 10 (9 NYCRR 3.10)* unconstitutional as construed and applied

* 3.10 Executive Order No. 10: Directing filing of financial statements by certain officers and employees within the Executive Department.

"I. All officers or employees in exempt, non-competitive, or unclassified positions within the Executive Department or any other State department or agency the head of which is appointed or nominated by the Governor, who earn $30,000 per year or more or who hold policy-making positions as determined by the Governor, and any other State officers appointed or nominated by the Governor, as the Governor may determine, shall, upon the filing of an oath of office and annually on May fifteenth thereafter, file with the Board of Public Disclosures, hereinafter established:

"1. A current sworn statement of assets and liabilities;

"2. A sworn statement of income sources for the period of holding office, specifying amounts in excess of $1,000.

"Until such time as the Board shall issue a form for such statements, which in no event shall be later than January 15, 1976, the form for such statements is appended hereto and is made a part of this Order [see below]. The Board shall receive the completed forms and review them prior to public inspection to assure adequate compliance and to evaluate any claims of privacy. The Board shall report to the Governor any conflict of interest or violation of this Order.

"The Board shall file these statements for public viewing with the Department of State in Albany, and shall establish a procedure, to be implemented by the Secretary of State, by which the statements so filed may be viewed by the public.

"Any person required to file such statements may request the Board to delete an item, which may be deleted by the Board only upon a finding that any such item is of a highly personal nature, does not in any way relate to the duties of the position held by such person, and does not create an actual or potential conflict of interest.

"II. No officer or employee of the Executive Department or of any other State department or agency the head of which is appointed or nominated by the Governor, who earns $30,000 per year or more or who holds a policy-making position as determined by the Governor, will engage in any activity which interferes or is in conflict with the proper and effective discharge of such person's official duties.

"To this end, any such officer or employee may not:

"—Hold any other public office or public employment for which compensation, direct or indirect, is received;

"—Expend time or otherwise engage in any private employment, profession, business or other activity from which compensation, direct or indirect, is derived;

"—Serve as director or officer of any profit-making corporation or institution;

"—Serve as an officer of any political party or political organization, or serve as a member of any political party committee; including political party district leader (however designated), or member of a political party's National Committee.

and denied defendants' cross motion for summary judgment.

Plaintiffs, the first three named being medical doctors employed by the Department of Health, are among 700 employees of the State who were asked to complete and file financial disclosure statements pursuant to Executive Order No. 10.

In order to narrow the focus of the constitutional inquiry required, the relevant point of departure is the legitimacy of governmental limitations upon constitutional rights when the sanctions concern the government's own employees. The Supreme Court of the United States has sanctioned the imposition of special restraints over the political activity of Federal employees which, if applied to the body politic generally, would cripple the democratic process *(United Public Workers v Mitchell,* 330 US 75). As far back as 1871, with the creation of the Federal Civil Service Commission, certain limited restrictions were placed on the political activity of employees of the executive branch. Pursuant to an Executive Order of President Theodore Roosevelt in 1907, employees in the Classi-

---

"Any request to deviate from the foregoing may only be allowed by the Board of Public Disclosure hereinafter established, upon written application to the Board, and after a specific finding by the Board that such particular activity does not violate the intent of this Order and in no way interferes or conflicts with the proper and effective discharge of the official duties of the person making the request. In reaching its determination, the Board shall also apply the provisions of Sections 73 and 74 of the Public Officers Law. The Board shall make a determination in each such case, which shall be final. The determination of the Board in every such case shall be filed for public inspection with the Department of State in Albany. The Board may promulgate rules governing the procedure by which such requests will be considered.

"III. There is hereby established in the Department of State a Board of Public Disclosure consisting of the Secretary of State, the Secretary to the Governor, the Counsel to the Governor and four persons to be appointed by the Governor. One of the four public members shall be designated by the Governor as Chairman. The public members shall serve during the term of the Governor, and shall receive no compensation, but shall receive reimbursement for any necessary expenses in connection with the performance of their duties. None of the public members may hold any public office elected or appointed, nor may they hold any office in any political party.

"IV. The Board shall examine financial information submitted to the Governor by prospective appointees and shall evaluate the financial interests of these prospective appointees to determine whether there are any actual or potential conflicts of interest. The Board shall advise the Governor on any such matters prior to his making any appointment.

"V. The public members of the Board shall within six months report to the Governor on the subject of public disclosure and conflict of interest, including recommendations for administrative and legislative action.

"Signed: Hugh L. Carey
"Dated : May 22, 1975."

fied Civil Service were forbidden to take part in political campaigns or political management. By virtue of the Hatch Act, the restriction of the 1907 Executive Order was extended to the entire Federal service, excluding the President, Vice-President and specified officials in policy making positions *(Civil Serv. Comm. v Letter Carriers,* 413 US 548). The Supreme Court in *Letter Carriers* determined that substantial curtailment of otherwise constitutionally protected behavior with respect to the political process was justified by the need of the Federal Government to be free of the corrupting and debilitating influences of rampant partisan activity on behalf of its own employees. The abolition of the spoils system and the creation of a competent, efficient and corruption free career service necessitated the creation of a nonpartisan image and attitude among Federal employees. These legitimate and compelling interests of government were sufficient to justify the curtailment of the constitutionally protected political rights of the employees. The employees were still privileged, however, to express their views on candidates and issues. The court concluded that the Hatch Act and the 1907 regulations were narrowly drawn in order to achieve the legitimate purpose of curtailing partisan political activity and did not unduly bring within its sanctions areas of expression and association not substantially connected to the properly proscribed partisan political activity.

In *Broadrick v Oklahoma* (413 US 601) the Supreme Court considered the questions raised by the Hatch Act and the *Letter Carriers* case in the context of a State proscription against partisan political activity concerning State employees. The attack in *Broadrick v Oklahoma (supra)* concerned the extent of the prohibition of partisan political activity which in its outer reaches could be deemed to apply in certain instances to protected conduct the curtailment of which would be unjustified by the legitimate and compelling State need to curtail partisan activity of governmental employees. The Supreme Court refused to treat the speculations of the contesting employees as a proper constitutional challenge to the face of the statute. It ruled the statute valid upon its face and put off to another day claims that certain types of conduct which could conceivably come within its prohibitory language might be deemed constitutionally protected. The conduct engaged in by the current plaintiffs was clearly within the valid purview of the statute and thus properly prohibited.

Analysis of the nature of the constitutional interest upon which Executive Order No. 10 impinges has not been clearly set forth by the plaintiffs. It is true that *Griswold v Connecticut* (381 US 479) speaks in terms of a right of privacy emanating from the specific language of several amendments; the First Amendment dealing with freedom of speech, freedom of the press, freedom of religion; the Fourth protecting from unreasonable searches of the person, home and private effects; the Fifth against compulsory incrimination and the due process clauses of the Fifth and Fourteenth Amendments. The right of a person to be free from unreasonable intrusion of governmental power partakes of the very essence of constitutional government and, of necessity, permeates all the specific guarantees of the Bill of Rights. Justice DOUGLAS writes in general terms with respect to a right of privacy. However, his specific analysis is bottomed upon references to the right of association and freedom of speech with respect to the dissemination of information concerning contraceptives. The conclusion of the court is that the State's legitimate right to regulate some aspects of a citizen's sexual life does not permit the State to assert jurisdiction over all aspects. Irrespective of the nature of the compelling State interest, the court in *Griswold* concluded that the right to disseminate information concerning contraceptives found justification under the First Amendment's freedom of speech, assembly and association. The right to use contraceptives in the privacy of one's home and in the sanctity of the marriage relationship concerned aspects of privacy touching upon the concerns of the Fourth and Fifth Amendments and also apparently of the Ninth Amendment concerning certain rights retained by the people. The question was posed by Justice DOUGLAS whether a proper search could be made of the marital abode to secure evidence of the illegal use of contraceptives. The majority found the idea constitutionally repulsive.

On occasion the public's right to know embodied in the First Amendment's guarantee of freedom of speech and press conflict with the individual's desire for privacy. In *Cox Broadcasting Corp. v Cohn* (420 US 469) the Supreme Court ruled unconstitutional a Georgia law that prohibited the publication of the name of a rape victim by the news media notwithstanding the name had been made public through official court records and proceedings in open court. In concluding that the State could not prohibit the dissemination by publication of

the name of the rape victim, the Supreme Court stated (p 491): "[I]t is appropriate to focus on the narrower interface between press and privacy that this case presents, namely, whether the State may impose sanctions on the accurate publication of the name of a rape victim obtained from public records—more specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection. We are convinced that the State may not do so."

The *Cox* case and several cases that followed thereafter exhibit a tendency to look more narrowly at the specific complaint and the immediate impact of the governmental intrusion *(California Bankers Assn. v Shultz,* 416 US 21; *United States v Miller,* 425 US 435; *Fisher v United States,* and *United States v Kasmir,* 425 US 391; *Buckley v Valeo,* 424 US 1). The disclosure of political contributions by candidates and committees has long had constitutional sanction although First Amendment freedom of speech and association were involved (see *Buckley v Valeo, supra,* p 12 *et seq.).* In *California Bankers Assn. v Shultz (supra)* the Supreme Court found no constitutional question posed where the Federal Government required banks to maintain records of checking accounts and to report certain domestic and foreign financial transactions. It ruled constitutional the requirements that banks maintain records on microfilm of checking account transactions in excess of $100. This is a function which the banks usually performed without legal compulsion and the banks could not assert either Fourth or Fifth Amendment rights concerning unreasonable searches or compulsory incrimination. No chilling impact upon constitutionally protected areas was made imminent by the requirement that the banks keep such records; hence, the challenge to the face of the statute was denied. The requirements of reporting transactions dealing with the transfer of monetary instruments into or out of the United States in the amount of $5,000 or more posed no problem with respect to the bank's requirement to report. The same analysis was applied to a requirement that all cash transactions in the amount of $10,000 or more be reported to the Internal Revenue Service. No constitutional violation with respect to the reporting requirements of the foreign or domestic transactions was found. The government had a very legitimate concern with large denomination cash transactions outside the normal ambit of a person's business

and, since the transaction was openly disclosed to the bank and its employees, no reason prohibited the transfer of the relevant information to the Internal Revenue Service.

The significance of *Shultz* with respect to Executive Order No. 10 and the instant plaintiffs arises from the fact that the government can require information based upon stated legitimate governmental concerns with respect to private financial transactions between certain classes of public employees and private financial institutions where the claim is that such disclosure invades the right of privacy or specific constitutional guarantees.

In *Fisher v United States (supra)* the Internal Revenue Service served summonses upon two taxpayers' attorneys requiring the production of certain worksheets and documents prepared by the taxpayers' accountants and transferred by the taxpayers from the accounts to the lawyers during the course of a tax investigation. The Supreme Court held that the requirement to produce these documents did not violate Fifth Amendment protections against compulsory self incrimination, since the taxpayers were not compelled to produce their own incriminating testimonial communications. The Fifth Amendment, the court held, did not protect reasonable expectations of privacy with respect to documents which were obtained without compelling self incriminating testimony. This was so notwithstanding the highly incriminating nature of the worksheets prepared by the accountants with respect to the taxpayers' civil or criminal responsibilities vis-à-vis the Internal Revenue Service.

Significantly no assertion is made here under the Fifth Amendment that disclosure would tend to incriminate plaintiffs or any of them. In *United States v Miller (supra)* the Supreme Court upheld the validity of a subpoena for bank records which was issued during the course of a criminal prosecution and which bank records were introduced into evidence. The court held that the Fourth Amendment was not violated and denied suppression of the deposit slips and original checks stating they were not confidential communications but negotiable instruments used in commercial transactions and that the Fourth Amendment did not prohibit obtaining information revealed to third parties *(Katz v United States,* 389 US 347). The subpoenaed documents did not fall within a constitutionally protected zone of privacy.

Several states have required financial disclosure by public employees by legislation or Executive Order. In *City of Carmel by-the Sea v Young* (2 Ca 3d 259) the California Supreme Court declared unconstitutional a statute which required every public officer and each candidate for State or local public office to file a public record describing the nature and extent of his investments and those of his spouse and a minor child in excess of $10,000. An unintentional violation of the statute was a misdemeanor and any knowing violation a felony. The California Supreme Court, applying the proposition that the restrictions imposed by a State on the activities of public employees should not be broader than required to serve the function of preserving efficiency and integrity in public service, found the disclosure provisions overly broad and that they impinged upon areas of privacy with respect to public officials which, by their nature, did not require disclosure. In speaking of the Fourth Amendment the Supreme Court of California stated (p 268): "In any event we are satisfied that the protection of one's personal financial affairs and those of his (or her) spouse and children against compulsory public disclosure is an aspect of the zone of privacy which is protected by the Fourth Amendment and which also falls within the penumbra of constitutional rights into which the government may not intrude absent a showing of compelling need and that the intrusion is not overly broad."

This analysis of the Fourth Amendment protection of the right to financial privacy does not find support in the more recent Supreme Court opinions already alluded to with respect to the Bank Secrecy Act and the IRS subpoena in *Fisher v United States* (425 US 391, *supra*). The very narrowly focused case by case factually oriented decisions of the United States Supreme Court do not support the sweeping Fourth Amendment constitutional principles as formulated by the Supreme Court of California in the *Carmel* case. A later opinion in *County of Nevada v MacMillen* (11 Cal 3d 662) adjudged constitutional a 1973 disclosure statute enacted by the California Legislature which had application to constitutional officers, county supervisors, city council members, planning commissioners and chief administrative officers requiring annual filing of a statement disclosing business investments in excess of $1,000, a real estate investments in excess of $1,000 and sources of loans and gifts exceeding $250. The business interests subject to disclosure must have produced income during

the applicable period. The California Supreme Court held that these disclosure provisions were sufficiently narrow to avoid the constitutional infirmities of the *Carmel* case.

A disclosure provision quite similar to New York Executive Order No. 10 was Executive Order No. 4 issued by the Governor of Illinois and held constitutional in *Illinois State Employees Assn. v Walker* (57 111 2d 512, cert den *sub nom Troopers Lidge No. 41 v Walker,* 419 US 1058). Executive Order No. 4 passed upon in the *Walker* case, required the filing of an economic interest statement and a copy of the most recent Federal and State income returns by (1) each person appointed by the Governor, (2) each person who received $20,000 or more per year from the State, (3) each person whose position is subject to undue influence as determined by the Board of Ethics. The statement of economic interest required the disclosure of (1) current net worth including assets and liabilities, (2) a statement of income received during the preceding year, detailing the source of the income and the total amount from each source and the nature of the income transactions, and (3) a statement of the gifts received during the preceding year over the value of $50 or more. Subject to the rule of the board, the statement also should disclose the interests of the spouse and the immediate family living with the person making the statement. In discussing the provision requiring all persons receiving $20,000 or more per year to file the disclosure statements, the Illinois Supreme Court stated: "Those persons appointed by the Governor, and those receiving more than $20,000 per year from the State are readily identifiable and these categories appear to embrace that relatively small percentage of all employees of the State who occupy the most responsible positions. For example, of more than 22,000 employees of the Department of Mental Health, about 500 are within the scope of the order." *(Illinois State Employees Assn. v Walker, supra,* p 520.)

In this affidavit opposing the preliminary injunction motion of plaintiffs and supporting the defendants' cross motion for summary judgment, the Executive Secretary of the Board of Public Disclosure asserts that out of the approximately 145,-000 State employees only 700 are required to complete financial disclosure statements under Executive Order No. 10. The Supreme Court of Illinois in the *Walker* case found no constitutional infirmity in the $20,000 salary bracket provision

which triggered the requirement of disclosure, and the Supreme Court of the United States denied certiorari.

The refusal of the Supreme Court to hear the case is in accord with its interpretation of the Fourth and Fifth Amendment claims passed upon in its most recent cases previously cited. The *Walker* case presents the predominant position of the State cases in the area. There is no New York case except *Hunter v New York* (Sup Ct, N Y County, TYLER, J., decided Sept. 29, 1975) which presents similar issues to those presented herein. The reasoning in *Hunter* is unpersuasive and does not detract from the precedential impact of *Illinois State Employees Assn. v Walker (supra)*.

In our system of government no State interest is more compelling than the assertion of the right of the public to have relevant information concerning the conduct of its government and its employees.

The judgment appealed from should be reversed and defendants' cross motion for judgment declaring Executive Order No. 10 constitutional granted.

MOULE, SIMONS, GOLDMAN and WITMER, JJ., concur.

Judgment unanimously reversed on the law, without costs and defendants' cross motion granted.