Obie Snider et al., Petitioners *v.* Milton J. Shapp, Governor of the Commonwealth of Pennsylvania et al., Respondents.

338

Argued June 5, 1979, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Craig and MacPhail. Judges Blatt and DiSalle did not participate.

*Michael I. Levin,* with him *William Fearen,* and *Cleckner & Fearen,* for petitioners.

*Robert B. Hoffman,* Deputy Attorney General, with him *Norman J. Watkins,* Deputy Attorney General, for respondents.

*Bruce A. Rosenfield,* with him, of counsel, *Schnader, Harrison, Segal & Lewis,* for amicus curiae, Common Cause.

OPINION BY JUDGE WILKINSON, JR., August 31, 1979:

On October 4, 1978, the Governor signed into law what is popularly known as the "Public Officials Ethics Law" (herein simply the Ethics Law or Act)[1] proscribing certain conduct involving conflicts of interest and to that end requiring that candidates for public office, elected officials and certain appointed officials file financial disclosure statements with a State Ethics Commission (hereafter the Commission) created to implement and administer the Act.

Petitioners, elected members of three school districts in the Commonwealth, have filed a class action

---

[1] Act of October 4, 1978, P.L. 883, *as amended,* 65 P.S. §401 et seq.

in this Court's original jurisdiction against the Governor, Treasurer, Auditor General, Attorney General, the Commission and its members individually, and the county boards of election and district attorneys as a class seeking injunctive and declaratory relief against implementation of the Act alleging the Act violates various provisions of the Pennsylvania and United States Constitutions. Following the filing of an amended petition for review,[2] respondents have filed preliminary objections presently before this Court. The Governor, Treasurer, Attorney General and the Commission have lodged a petition raising the question of this Court's jurisdiction and preliminary objections in the nature of a demurrer. The Auditor General has filed separate preliminary objections relating to petitioners' claims against him.[3] For the reasons set forth we will sustain the preliminary objections of the Governor, Treasurer, Attorney General and the Commission.

---

[2] Petitioners filed an original petition for review with this Court on January 9, 1979. On January 30, 1979, this Court preliminarily enjoined enforcement of Section 4(b) of the Act, 65 P.S. §404(b) by county election officials. Section 4(b) was subsequently amended to become effective on August 1, 1979. See Act of February 26, 1979, P.L. , No. 1. Thereafter, the Auditor General filed a motion to drop a party under Pa. R.C.P. No. 2232(b) and preliminary objections were filed by the Governor, Secretary of the Commonwealth and Treasurer. The amended petition for review presently before this Court was then filed. The amended petition deleted the Secretary of the Commonwealth as a respondent and added as respondents, the Ethics Commission, its members and county district attorneys.

[3] The Auditor General has filed preliminary objections in the nature of a demurrer for failure to state a cause of action against him and a motion to strike for lack of conformity to Pa. R.A.P. 1513(a). Having determined that preliminary objections to the substantive validity of petitioners' claims must be sustained and the petition dismissed, we need not address the procedural questions raised by the Auditor General regarding his status as a party.

Petitioners Snider and Hoffman aver that each is an elected public official subject to the provisions of the Act, either as a candidate seeking re-election in the general election or as an incumbent school director and each avers that he will resign rather than comply with the disclosure provisions of the Act. Petitioner Barker avers that compliance with the financial disclosure provisions of the Act is against her husband's wishes and will cause severe harm to her marriage. Petitioners allege the Act on its face violates Article I, Sections 5 and 8, Article III, Section 28 and Article IV, Section 8 of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution. Petitioners also allege the implementation of various provisions of the Ethics Law will cause irreparable damage and injury to them in that it will cause an expenditure of tax money for an unlawful purpose and will cause an improper and unwarranted interference with petitioners' "right to run and serve as school directors." The amended petition for review further includes a count in quo warranto requesting that the three individual members of the Commission appointed by the Governor be removed from office.

The stated purpose of the Ethics Law is to "strengthen the faith and confidence of the people of the State in their government" and to assure the people that "the financial interests of holders of or candidates for public office present neither a conflict nor the appearance of a conflict with the public trust."[4] The Act then prohibits eight categories of conduct,[5]

---

[4] Section 1 of the Act, 65 P.S. §401.

[5] Section 3 of the Act, 65 P.S. §403, provides:

(a) No public official or public employee shall use his public office or any confidential information received through his holding public office to obtain financial gain other than compensation provided by law for himself, a

requires the filing of annual financial statements by public officials, candidates and certain public em-

member of his immediate family, or a business with which he is associated.

(b) No person shall offer or give to a public official or public employee or candidate for public office or a member of his immediate family or a business with which he is associated, and no public official or public employee or candidate . . . shall solicit or accept, anything of value, including a gift, loan, political contribution, reward, or promise of future employment based on any understanding that the vote, official action, or judgment of the public official or public employee or candidate for public office would be influenced thereby.

(c) No public official or public employee or a member of his immediate family or any business in which the person or a member of the person's immediate family is a director, officer, owner or holder of stock exceeding 5% of the equity at fair market value of the business shall enter into any contract valued at $500 or more with a governmental body unless the contract has been awarded through an open and public process, including prior public notice and subsequent public disclosure of all proposals considered and contracts awarded. . . .

(d) Other areas of possible conflict shall be addressed by the commission. . . .

(e) No former official or public employee shall represent a person, with or without compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body.

(f) No person shall use for any commercial purpose information copied from statements of financial interests required by the act. . . .

(g) No former executive-level State employee may for a period of two years from the time he terminates his State employment be employed by . . . a business or corporation that he actively participates in recruiting to the Commonwealth of Pennsylvania or that he actively participated in inducing to expand an existent plant or facility within the Commonwealth. . . .

(h) (1) Any individual who holds an appointive office in any political subdivision shall not have any interest in

ployees,[6] establishes an independent, nonpartisan Eth-

any contract or construction in which that political subdivision shall enter or have an interest.

[6] Section 4 of the Act, 65 P.S. §404 provides in pertinent part:

(b) Each candidate for public office shall file a statement of financial interests for the preceding calendar year with the commission prior to filing a petition to appear on the ballot for election as a public official. A petition to appear on the ballot shall not be accepted by an election official unless the petition includes an affidavit that the candidate has filed the required statement of financial interests with the commission.

. . . .

(d) No public official shall be allowed to take the oath of office or enter or continue upon his duties, nor shall he receive compensation from public funds, unless he has filed a statement of financial interests with the commission. . . .

Section 5 of the Act, 65 P.S. §405, which details the financial interests which must be disclosed, reads as follows:

(a) The statement of financial interests filed pursuant to this act shall be on a form prescribed by the commission and shall be signed under penalty of perjury by the person required to file the statement.

(b) The statement shall include the following information for the prior calendar year with regard to the person required to file the statement and the members of his immediate family:

(1) The name, address and position of the person required to file the statement.

(2) The occupations or professions of the person required to file the statement and those of his immediate family.

(3) Any direct or indirect interest in any real estate which was sold or leased to the Commonwealth, any of its agencies or political subdivisions; purchased or leased from the Commonwealth, any of its agencies or political subdivisions; or which was the subject of any condemnation proceedings by the Commonwealth, any of its agencies or political subdivisions.

(4) The name and address of each creditor to whom is owed in excess of $5,000 and the interest

ics Commission[7] and provides for civil and criminal penalties for violations of the restricted activities provision and the disclosure requirements.[8]

We will consider the respondents' preliminary objections to the constitutional challenges posed regarding these provisions of the Act seriatim.

## I. The Vagueness Challenge

Petitioners have sought injunctive and declaratory relief alleging that the Act is so vague and indefinite in the terms it employs to define a crime that enforcement would constitute a violation of the due process

---

rate thereon. However, loans or credit extended between members of the immediate family and mortgages securing real property which is the principal residence of the person filing or his spouse shall not be included.

(5) The name and address of any person who is the direct or indirect source of income totalling in the aggregate $500 or more. However, this provision shall not be construed to require the divulgence of confidential information protected by statute or existing professional codes of ethics.

(6) The name and address of any person from whom a gift or gifts valued in the aggregate at $200 or more were received, and the value and circumstances of each gift. However, this provision shall not be applicable to gifts received from the individual's spouse, parents, parents by marriage, siblings, children or grandchildren.

(7) The source of any honorarium received which is in excess of $100.

(8) Any office, directorship or employment of any nature whatsover in any business entity.

(9) Any financial interest in any legal entity engaged in business for profit.

(c) The statement of financial interest need not include specific amounts for any of the items required to be listed.

[7] *See* Section 6 of the Act, 65 P.S. §406.

[8] *See* Section 9 of the Act, 65 P.S. §409.

clause of the Fourteenth Amendment of the United States Constitution.

Respondents initially question whether an action for declaratory judgment is appropriate in this case and secondly whether petitioners have standing to challenge these provisions. In particular, respondents argue that no justiciable controversy and no antagonistic claims indicating imminent and inevitable litigation are present in this case.

The stated purpose of the Declaratory Judgments Act, 42 Pa. C.S. §7531 et seq. is to settle and afford relief to any person from uncertainty and insecurity with respect to right, status and legal relations affected by a statute. We believe sufficient uncertainty exists with respect to the facial validity of these provisions of the Ethics Law to meet the threshold jurisdictional requirements of the Declaratory Judgments Act. Further, we find that petitioners and the class of school directors they represent are sufficiently affected by the provisions of the Act to provide standing to challenge its validity on vagueness grounds. *See Singer v. Sheppard*, 33 Pa. Commonwealth Ct. 276, 381 A.2d 1007 (1978).

In this context, however, we must note that a statute challenged on vagueness grounds is presumed to be constitutional and will not be declared otherwise unless it clearly, palpably and plainly violates the Constitutions of this Commonwealth or the United States. *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975). The allegations of petitioners in this regard are necessarily limited to the facial invalidity of the Act, since petitioners' averments contain no facts indicating enforcement of the provisions against petitioners or that any of the petitioners are engaged in conduct arguably within the proscription of the Act. In this posture, we must conclude that petitioners have failed to sustain their burden in this regard.

The sole support underpinning petitioners' vagueness challenge is a reference to an opinion of the Attorney General which attempted to interpret various provisions of the Act. To find this Act unconstitutional on such a thin reed would in our judgment amount to construing a statute in a vacuum. Further, an examination of Section 3 of the Act, 65 P.S. §403 containing activities restricted by the Ethics Law leads us to conclude that the section is neither so vague nor inconsistent on its face as to deny due process. While the applicability of Section 3 to particular factual situations must necessarily await regulations and opinions of the Commission, the conduct proscribed by Section 3 is in our view, clearly and plainly set forth. We believe, therefore that judicial interpretation of these sections must await cases which properly present concrete questions for resolution.

II. Validity of Disclosure Requirements

Petitioners contend the disclosure requirements of Sections 4 and 5 of the Ethics Law, infringe on their right of privacy as guaranteed by the Bill of Rights made applicable to the states by the Fourteenth Amendment of the United States Constitution and the right to be free from unreasonable searches guaranteed by Article I, Section 8 of the Pennsylvania Constitution. Petitioners argue that the constitutional guarantees require that the legislature relate those areas of disclosure to sources of income of public officials which might be expected to give rise to a conflict of interest. Respondents have demurred to these allegations for failure to state a claim for which relief may be granted.

The right of privacy asserted here by petitioners has been defined by the United States Supreme Court as "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 599

(1977). The Court has recognized that this right of privacy can be implicated in required disclosure of information concerning financial matters, *see Buckley v. Valeo,* 424 U.S. 1 (1976), and further, extends to those matters of a personal nature of public officials which are not related to any acts done by them in their personal capacity, *see Nixon v. Administrator of General Services,* 433 U.S. 425 (1977). Further, our Supreme Court in *Annenberg v. Roberts,* 333 Pa. 203, 2 A.2d 612 (1938) recognized that the right of privacy possessed by private individuals as guaranteed by the Pennsylvania and United States Constitutions extends to financial records so that a subpoena of such records issued by a legislative committee must be limited to such disclosure as is reasonably required to meet the general purpose of the legislative inquiry.

While many state courts in considering the validity of similar state statutes and plans have devised various means of analyzing these constitutional claims,[9]

---

[9] The United States Supreme Court has acted on four cases from state Supreme Court involving constitutional attacks on similar state conflicts of interest plans. *Montgomery County v. Walsh,* 274 Md. 502, 336 A.2d 97 (1975), *appeal dismissed,* 424 U.S. 901 (1976) ; *Illinois State Employees Association v. Walker,* 57 Ill. 2d 512, 315 N.E. 2d 9 (1974), *cert. denied sub nom. Troopers Lodge No. 41 v. Walker,* 419 U.S. 1058 (1974) ; *Fritz v. Gorton,* 83 Wash. 2d 275, 517 P.2d 911, *appeal dismissed,* 417 U.S. 902 (1974) ; *Stein v. Howlett,* 52 Ill. 2d 570, 289 N.E. 2d 409 (1972), *appeal dismissed,* 412 U.S. 925 (1973). While the dismissals by the Supreme Court caution us against finding the disclosure provisions of the Ethics Law unconstitutional, they do not relieve this Court of the obligation to undertake an independent examination of the statutory provisions here at issue. *See Mandel v. Bradley,* 432 U.S. 173 (1977).

Similar claims of violations of the constitutionally protected right of privacy have been rejected by a number of courts in reviewing disclosure statutes and regulations. *See County of Nevada v. MacMillen,* 11 Cal. 3d 662, 114 Cal. Rptr. 345, 522 P.2d 1345 (1974) ; *Goldtrap v. Askew,* 334 So. 2d 20 (Fla. 1976) ; *Illinois State Employees Association, supra; Stein v. Howlett, supra; Montgomery County v. Walsh, supra; Klaus v. Minnesota State Ethics Commis-*

we believe the Court in *Annenberg, supra,* provides the appropriate vehicle to test petitioners' claims in this area. The rule is simply: Where it is alleged that legislation impinges on the right of privacy, the question in each instance depends upon the relevancy of the information sought to the purpose of the legislature in enacting the statute. A determination of relevancy in this regard requires that this Court measure the interest to be served by the disclosure requirement against the interest it infringes upon. *See Plante v. Gonzalez,* 575 F.2d 1119 (5th Cir. 1978).

The right of privacy, simply expressed as "the right to be let alone," is essentially an interest which exists independent of any concrete or harmful damage flowing from public disclosure of private matters. But, it is a right that is protected by degrees and in kind. Thus, personal finances and the right to be free from regulation or disclosure have been accorded less protection on the value scale of privacy than purely personal interests involving marriage or the family. *Compare Buckley v. Valeo, supra, with Roe v. Wade,* 410 U.S. 113 (1972).

Conversely, the interest of the public in knowledge of their government runs to the core of our political system. It is the right to be informed concerning matters bearing upon the fitness of an individual to serve in a public office and hold a public trust that is being

---

*sion,* 309 Minn. 430, 244 N.W. 2d 672 (1976); *Lehrhaupt v. Flynn,* 129 N.J. Super. 327, 323 A.2d 537 (Chan. Div. 1974), *aff'd,* 149 N.J. Super. 250, 356 A.2d 35 (App. Div. 1976); *Kenny v. Byrne,* 144 N.J. Super. 243, 365 A.2d 211 (App. Div. 1976); *Evans v. Carey,* 53 A.D. 2d 109, 385 N.Y.S. 2d 965, *aff'd,* 40 N.Y. 2d 1008, 391 N.Y.S. 2d 393, 359 N.E. 2d 983 (1976); *Fritz v. Gorton, supra; In Re Kading,* 70 Wis. 2d 508, 235 N.W. 2d 409 (1975). *But see City of Carmel-by-the-Sea v. Young,* 2 Cal. 3d 259, 85 Cal. Rptr. 1, 466 P.2d 225 (1970); *Advisory Opinion on Constitutionality of 1975 PA 227 (Questions 2-10),* 396 Mich. 465, 242 N.W. 2d 3 (1976); *Dunphy v. Sheehan,* 92 Nev. 259, 549 P.2d 332 (1976).

vindicated by the requirement that private interests be disclosed. As the Court stated in *Fritz v. Gorton, supra* at 296, 517 P.2d at 924:

> The crux of evaluating the capabilities and motivations of any candidate for public office or incumbent public official is *information* bearing upon fitness for office. We need not fear that any candidate or official may not apprise the electorate of his capabilities. Opponents, of course, will emphasize any lack of ability. (Emphasis in original.)

On this point, we think it plain that to limit disclosure to financial interests that relate only to government activities or to the functions and duties of a particular officeholder would not guarantee the absence of a conflict or enhance the confidence of the people in an honest and impartial government. *See* Section 1 of the Act, 65 P.S. §401.

The language of the Supreme Court of Illinois in *Stein v. Howlett, supra* at 577, 289 N.E. 2d at 413, on the question of relevancy is particularly persuasive:

> [T]he plaintiff questions how the disclosure of a business connection, unrelated to any activity of the State serves to avoid the conflicts of interest hoped to be disclosed and obviated by the statute. We acknowledge that the disclosure of a business connection which is truly unrelated to any State activity cannot help to achieve the desired purpose. But who is to say whether or not there is a business connection or relation with the State? Who is to say that the business within the State which does not do business directly with the State, but which supplies another company which does, has no connection with the State? Who is to say that a capital gain from the sale of an asset to a stockholder of a company doing business with the State has

no connection with the position of a public official?

Similarly, given the myriad of public posts in the Commonwealth which involve positions of public trust, we think it clear beyond serious argument that the legislature would face an insurmountable task of tailoring each disclosure requirement to each particular post. Further, it would be anomalous to suggest that individuals determine for themselves what financial matters are relevant to a public position. *See Fritz v. Gorton, supra.*

It is true, as petitioners argue, that the disclosure provisions impose a substantial burden on those who would hold public office and requires that these individuals forego a large measure of privacy regarding their personal and family finances in so doing. It may be that some dedicated public officials of unimpeachable integrity and honesty will resign and others forego public service rather than comply with the statute. It is plain, however, that these observations reflect upon the wisdom of the legislature in so acting, rather than upon their power to act.

Having concluded that Sections 4 and 5 of the Act are reasonably aimed at the legislative purpose of the statute, we must sustain respondents' preliminary objection to petitioners' claim.

III. Validity of Gubernatorial Appointments

Respondents next attack petitioners' claims for injunctive and declaratory relief and the count in quo warranto against the implementation of Section 6(a) of the Ethics Law, contending that petitioners lack standing to assert a violation of Article IV, Section 8 of the Pennsylvania Constitution, or alternatively, that no constitutional violation is present. While we have determined that petitioners have alleged sufficient grounds to establish standing, *see Wm. Penn*

*Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), we perceive no constitutional violation present in the authority granted the Governor under Section 6(a) of the Act.

The law regarding whether or not senatorial confirmation is required of permanent gubernatorial appointments to administrative boards and commissions has been fully set forth by this Court in *Crisconi v. Shapp,* 5 Pa. Commonwealth Ct. 275, 280 (1972). There, this Court stated:

It is clear to us that the adoption of Article IV, Section 8, as it presently reads, was for the purpose of eliminating the previously required senatorial approval of appointments by the Governor to *all* appointive offices to which the Governor could appoint under the Constitution or by statute. Senatorial approval is *now* necessary *only* in those instances where senatorial approval is *specifically* mandated by the Constitution or by statute. (Emphasis in original.)

Since Section 6(a) of the Ethics Law expressly provides that gubernatorial appointments to the Commission shall be made without Senate approval, we find no apparent conflict with Article IV, Section 8 of the Pennsylvania Constitution.

We find petitioners' argument that *Crisconi, supra,* is no longer viable in light of the intervening amendment to Article IV, Section 8[10] and *Frame v. Sutherland,* 459 Pa. 177, 327 A.2d 623 (1974) and *Stroup v. Kapleau,* 455 Pa. 171, 313 A.2d 237 (1973) is without merit. Both the amended portion of Section 8 and the above cited cases deal with the problem of temporary gubernatorial appointments. *See* Section 8(b) of Article IV. The gubernatorial appointments made here were made pursuant to Section 8(a)

---

[10] Adopted May 20, 1975.

and are fully in accord with the constitutional commands of that section.

IV.   Article I, Section 28 claim

Under Article I, Section 28 of the Pennsylvania Constitution a statute may not impose unequal benefits or burdens upon members of society based upon their sex.   Petitioner Barker contends that because her husband is opposed to the disclosure of financial information concerning their family, she will suffer irreparable harm to her marriage if forced to comply with Sections 4 and 5 of the Act.   Further, petitioners argue that because husbands are generally in control of the family finances and generally the "breadwinners" of the household, the statute has the practical effect of deterring women from participating fully in political activity by reason of the disclosure requirements of Sections 4 and 5.

The equal rights clause of the Pennsylvania Constitution is offended only when sex is used as a classifying tool.   *Commonwealth v. Butler*, 458 Pa. 289, 328 A.2d 851 (1974).   The provisions of the Ethics Law place equal burdens on both sexes.   Wives as well as husbands might object to public disclosure of the family's finances and wives as well as husbands might deter their spouses from public office rather than agree to public disclosure.   The burdens upon the family unit as well as the individual might be great, but these burdens place no more weight upon one sex than the other.

We conclude, therefore, that petitioners' averments are insufficient to support a claim under Article I, Section 28.

V.   Equal Protection-Due Process

Petitioners also allege that because elected school directors are subject to the Act and appointed school directors are not, the Ethics Law violates the equal

protection and due process clauses of the Fourteenth Amendment of the United States Constitution. Petitioners argue that members of the Philadelphia School District and appointed members of other school districts in the Commonwealth are not "public officials" as defined by the Act in that these school directors are expressly excluded under Section 2 of the Ethics Law, 65 P.S. §402 since they are appointed officials who receive no compensation other than reimbursement for actual expenses.[11]

The equal protection clause of the Fourteenth Amendment does not deny the state the power to treat different classes of persons different ways; it merely requires that where a classification is made it must be reasonable and not arbitrary in that the classification must be based on some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced will be treated alike. *Moyer v. Phillips*, 462 Pa. 395, 341 A.2d 441 (1975). President Judge Bowman, speaking for this Court in *Danson v. Casey*, 33 Pa. Commonwealth Ct. 614, 628, 382 A.2d 1238, 1244-45 (1978), *aff'd*, 484 Pa. 415, 399 A.2d 360 (1979) noted:

> The application of this standard has resulted in a test, whereby a legislative classification will be given judicial sanction if *some* reasonable basis can be deduced to support it. The test being not wisdom, but good faith in the classification. Seabolt v. Commissioners of

---

[11] Philadelphia is the only school district in the Commonwealth which has the option to appoint rather than elect its school directors. *See* the First Class City Public Education Home Rule Act, Act of August 9, 1963, P.L. 643, *repealed in part* by Section 3 of the Act of November 16, 1967, P.L. 500, 53 P.S. §13201 et seq. Vacancies in elective school board positions are also filled by appointment. *See* Sections 315, 316 and 317 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§3-315-317.

Northumberland County, [187 Pa. 318 at 323, 41 A.2d 22 at 23 (1898)]. As a corrollary, a rule has arisen that an act of the General Assembly cannot be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. Longwood Villa Nursing and Convalescent Home Appeal, 26 Pa. Commonwealth Ct. 620, 364 A.2d 976 (1976). (Emphasis in original.)

Further, where a statutory classification is attacked for under-inclusiveness, as here, the equal protection clause does not require that the state must choose between attacking every aspect of the problem or not attacking the problem at all. *Dandridge v. Williams,* 397 U.S. 471 (1970). "Legislatures may implement their program step by step . . . adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." *New Orleans v. Dukes,* 427 U.S. 297, 303 (1976) (citations omitted).

Within this constitutional framework, we turn to an examination of the statute. The challenged portion of Section 2 of the Act defines "Public Official" as:

Any elected or appointed official in the Executive, Legislative or Judicial Branch of the State or any political subdivision thereof, provided that it shall not include members of advisory boards that have no authority to expend public funds other than reimbursement for personal expense, or to otherwise exercise the power of the State or any political subdivision thereof. 'Public official' shall not include any appointed official who receives no compensation other than reimbursement for actual expenses.

It is apparent, at least to this Court, that this classification of "public official" subject to the Act is re-

356

lated to the declaration of Section 1 of the Act that "any effort to realize personal financial gain through public office other than compensation provided by the law is a violation of [the public] trust" and the stated purpose of the Act to assure the people that all holders of public office and candidates for public office present neither a conflict nor the appearance of a conflict with the public trust. In this vein, we note that the Act essentially creates four classes of "officials." Thus, all candidates for any elective office and all elected officials, whether compensated or not, are subject to the Act, while only certain appointed officials who receive compensation must comply with the Act. The distinction has been neatly, but not irrationally, drawn. Candidates for elective office, by choice, place their qualifications and credentials before the voters in a free and open contest with other candidates; information concerning their qualifications is certainly relevant to and bears a rational relationship with the purpose of the statute. Similarly, appointed officials subject to the Act, *i.e.*, officials who are compensated and have authority to disburse public funds are in a clear position to realize personal financial gain through public office. While petitioners rightly point out that with respect to certain appointed school directors this results in some practical inequality and inconsistency, such an effect will not result in a denial of equal protection where, as here, there is some reasonable basis to justify the legislative classification.[12] *See Dandridge, supra.*

[12] The respondents would have us interpret the Act to cover individuals who accept appointment to a non-paying elective position such as school director in other than counties of the first class. While this exclusion may have been an oversight or inadvertence, it is not our prerogative to change the plain language of the Act. If this exclusion was not intended, it can be changed easily by the legislature.

We conclude, therefore, that respondents' preliminary objections to petitioners' equal protection claim must be sustained.

## VI. The Right To Hold Public Office

Petitioners' alleged constitutional infirmity in regard to the right to hold public office is based on the contention that the Ethics Law violates Article I, Section 5 and Article III, Section 27 of the Pennsylvania Constitution and the right to a republican form of government. We must agree with respondents that petitioners have failed to state a cause of action premised on any of these constitutional guarantees.

Article I, Section 5 prohibits the interference with the "free exercise of the right of suffrage." Petitioners argue that the Act limits the field from which voters may choose school directors and hence, the constitutional right is implicated. However, a variety of statutes validly establish qualifications for elective office and hence limit the field of candidates. The inapplicability of this section to laws establishing such criteria for holding office was clearly enunciated by our Supreme Court in *Winston v. Moore*, 244 Pa. 447, 458, 91 A. 520, 523 (1914) where the Court stated:

This duty is enjoined upon the candidate and not upon the elector. The rights of the voter are only incidentally involved. . . . No man need be a candidate for office unless he chooses to be, and if he desires to become a candidate, it is difficult to see what constitutional right of the individual elector has been subverted by requiring a candidate to make affidavit of facts pertinent to his candidacy.

Similarly, the guarantees of Section 27 of Article III of the Constitution are likewise inapplicable to the Ethics Law since this provision merely prohibits extending the term or altering the salary or emoluments of public office.

Finally, petitioners argue that Section 3(b) of the Act, 65 P.S. §403(b) infringes upon the right to a republican form of government in that this section can be construed to prohibit any campaign contributions made to a candidate. Petitioners' argument in this regard is similar to the claims made earlier with regard to allegations of vagueness in Section 3 as a whole. While stretching the imagination of the creative mind might lead to the conclusion that Section 3(b) would prohibit campaign contributions, an equally reasonable conclusion is that this section merely prohibits the buying and selling of votes and influence. We conclude petitioners' allegations in this regard must await concrete cases for review.

Accordingly, we will enter the following

ORDER

AND Now, August 31, 1979, the preliminary objections are hereby sustained and petitioners' Amended Petition for Review is hereby dismissed.

---

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent. I can find no rational basis for the distinction between elected and compensated appointed officials on the one hand and uncompensated appointed officials on the other which is drawn by Section 2 of the Act of October 4, 1978 (Act), P.L. 883, *as amended*, 65 P.S. §402. Therefore, I would hold that the Act violates Petitioners' equal protection rights[1] and is unconstitutional.

The praiseworthy purposes of the Act, as set forth in Section 1, 65 P.S. §401, are twofold: (1) to assure that public officials do not realize personal financial gain through their offices and (2) to strengthen public faith and confidence in government by assuring that an official's financial interests will present neither a conflict nor the appearance of a conflict of interest

---

[1] U. S. Const., Amend. XIV, §1.

with the public trust. The purposes of the Act are so important to the integrity of our governmental process and to the public's support of that process that I can see no rational basis for excluding appointed officials merely because they receive no direct compensation from the State or political subdivision they serve.

If the purposes of the Act are to be served it must apply to all public officials, elected or appointed, compensated or uncompensated, who exercise the power of the State or of any political subdivision.[2]

[2] Respondents argue that if we find that the Act violates Petitioners' equal protection rights, we should not invalidate the Act but should extend it to include noncompensated, appointed public officials. I do not believe that we have the power to do that in a case such as this. Respondents cite two cases for the proposition that statutes attacked on equal protection grounds may be extended to include classes of persons omitted from their coverage. *Jimenez v. Weinberger*, 417 U.S. 628 (1974); *Gomez v. Perez*, 409 U.S. 535 (1973). In both of those cases, however, the Court extended a *right* to the excluded classes. Here, we are being asked to extend a *restriction* to the excluded classes. While I believe that *all* public officials should be included within the coverage of the Act, I do not believe that it is within our power to so extend the Act.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I agree with nearly all that Judge WILKINSON, JR., has so well written for the majority, but I cannot agree that the Ethics Law[1] does not violate the equal protection clause of the Fourteenth Amendment of the United States Constitution.

The imposition of the burden of financial disclosure is placed upon elected school directors but not upon appointed school directors. Thus, an appointed school director possessing the same power as an elected school director, beside whom he sits at the school

[1] Act of October 4, 1978, P.L. 883, *as amended*, 65 P.S. §401 et seq.

board meeting, and subject to the same temptations to abuse that power, need not make the financial disclosure required of the elected school director. In view of the objectives of the Ethics Law,[2] there does not seem to me to be any rationale to including the elected school director and excluding the appointed school director from the requirements of the Ethics Law.[3] The majority views this distinction as being "neatly, but not irrationally drawn." I would view it as being too neatly drawn to pass constitutional standards.

Likewise, although I recognize the justification for the classification of cities, I consider those reasons to have no relevancy here. The Ethics Law is intended to "strengthen the faith and confidence of the people of the state in their government." It is simply not a reasonable or rational classification, to my mind, that that purpose is intended to stop at the boundaries of the City of Philadelphia, where all school directors are appointed. The stated purpose of the Ethics Law

---

[2] Section 1 of the Ethics Law stated this purpose as follows:
The Legislature hereby declares that public office as a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust. In order to strengthen the faith and confidence of the people of the State in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or candidates for public office present neither a conflict nor the appearance of a conflict with the public trust. Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this act shall be liberally construed to promote complete disclosure.

[3] In this case, three elected school board directors have alleged in the petition for review, and have testified at the preliminary injunction hearing held before Judge WILKINSON, JR. that they will resign or refuse to run for reelection if required to file a financial statement. Irrationally, the vacancies caused by these resignations will be filled by appointees who are not required to file financial statements.

is no less compelling, depending upon the size of the school district, and I cannot perceive the rationale of requiring school directors throughout the Commonwealth to be subject to the Ethics Law but exempting those in Philadelphia from its provisions.