# Constitutionality of the Disclosure Provisions of the Ethics in Government Act as Applied to Officials' Spouses

Whatever test is applied to test their constitutionally, the provisions of the Ethics in Government Act that require certain high-level officials to disclose information concerning their spouses' financial interests do not invade any constitutionally protected privacy right.

The financial disclosure provisions at issue are narrowly drawn to promote Congress' interest in using disclosure to enforce substantive prohibitions vis-a-vis high-level officials.

January 9, 1980

## MEMORANDUM OPINION FOR THE CHAIRMAN·OF THE FEDERAL TRADE COMMISSION

You have asked for our advice about the refusal by a former official of the Federal Trade Commission (FTC) to disclose information concerning his wife's financial interests, information he is required to disclose by Title II of the Ethics in Government Act, Pub. L. No. 95–521, 92 Stat. 1836 (1978), as amended, 5 U.S.C. App. I. The official filed the statement required by the Act but omitted this information. He said that he was willing to disclose it confidentially, but he argued that the provisions of the Ethics in Government Act, which effectively compel public disclosure of the information, violated his and his wife's constitutional rights. For the reasons set forth below, we believe that the challenged provisions are constitutional.[1] We suggest that you inform the official of this conclusion and of any conclusion reached by the Office of Government Ethics, to which you also referred the matter, and allow him to decide, in light of this information, whether he wishes to complete his report. In this connection, you may give him a copy of this memorandum.

Title II of the Ethics in Government Act requires high-level Executive Branch officials, see § 201(f), to file reports disclosing a number of details about their income, assets, and liabilities, about gifts and reimbursements they have received, about certain sales or exchanges of

---

[1] Ordinarily, this Office would not seriously consider concluding that an Act of Congress was unconstitutional. See, e.g., 40 Op. Att'y Gen. 158, 160–61 (1942); 39 Op. Att'y Gen. 11, 16 (1937); 31 Op. Att'y Gen. 475, 476 (1919). In this case, however, we are confident that the challenged provisions would be upheld by a court, and we have set forth our reasons for believing these provisions to be constitutional so that the official might know that his arguments have been fully considered.

real property and securities, and about some other financial affairs and arrangements. *See* § 202(a)–(d). With some exceptions and modifications they must disclose comparable information about their spouses and dependent children. *See* § 202(e). These reports are to be made public. *See* § 205. The official involved here contends that the government cannot constitutionally require him to disclose to the public financial information about his wife that is not already a matter of public record. He makes a number of arguments in a legal memorandum he filed with your agency in support of his position.

His most substantial argument is that the Act violates his wife's constitutional right to privacy. The Supreme Court has said that the right of privacy comprises an "individual interest in avoiding disclosure of personal matters." *Whalen* v. *Roe,* 429 U.S. 589, 599 (1977). The Court has never invalidated a statute solely because it infringed this kind of "privacy" interest. *Compare id.* at 599 n.25 *with id.* at 607–09 (Stewart, J., concurring). But on at least two occasions the Court seriously considered claims that government action unconstitutionally invaded this interest; in both cases it rejected the claims only after concluding that the "personal matters" involved would be disclosed not to the public at large but only to a small group of selected officials who were unlikely to publicize it. *See, id.* at 605–06; *Nixon* v. *Administrator of General Services,* 433 U.S. 425, 458–59, 462, 464–65 (1977). Neither of these cases involved financial information,[2] but as two Justices have said, "[f]inancial transactions can reveal much about a person's activities, associations, and beliefs. At some point, governmental intrusion upon these areas would implicate legitimate expectations of privacy." *California Bankers Association* v. *Shultz,* 416 U.S. 21, 78–79 (1974) (Powell and Blackmun, JJ., concurring). *See also Buckley* v. *Valeo,* 424 U.S. 1, 66 (1976). *But see O'Brien* v. *DiGrazia,* 544 F.2d 543, 545–46 (1st Cir. 1976), *cert. denied,* 431 U.S. 914 (1977). The Fifth Circuit has upheld the judicial branch disclosure provisions of the Ethics in Government Act, *Duplantier* v. *United States,* 606 F.2d 654, 669–71 (1979), as well as a state statute similar to the Act, *Plante* v. *Gonzalez,* 575 F.2d 1119 (1978), but nevertheless said that public officials' "interests in financial privacy" were "substantial." *Id.* at 1135. "Financial privacy is a matter of serious concern, deserving strong protection." *Id.* at 1136.[3] *See also Slevin* v. *City of New York,* 477 F. Supp. 1051 (S.D.N.Y. 1979).

[2] In *Whalen* v. *Roe,* 429 U.S. 589, 599 (1977), patients and doctors challenged New York's practice of keeping centralized computer records of prescriptions for dangerous but legal drugs. *Nixon* v. *Administrator of General Services,* 433 U.S. 425 (1977), involved the personal communications and diaries of former President Nixon; they were commingled with a much larger volume of public papers that government archivists were to screen.

[3] The official also suggests that the Act interferes with his wife's First Amendment freedoms because her financial interests may reveal her political beliefs and associations. The Supreme Court has, indeed, frequently held that forcing the disclosure of information about certain First Amendment activities can deter people from engaging in them. *See, e.g., Gibson* v. *Florida Legislative Comm.,* 372 U.S. 539 (1963); *NAACP* v. *Button,* 371 U.S. 415 (1963); *Shelton* v. *Tucker,* 364 U.S. 479 (1960); *Bates*

Continued

For these reasons, some state courts have held that statutes requiring financial disclosure are unconstitutional unless they are necessary to promote a compelling governmental interest. *See, e.g., City of Carmel-by-the-Sea* v. *Young,* 2 Cal.3d 259, 268, 466 P.2d 225, 231–32, 85 Cal. Rptr. 1, 7–8 (1970). No Federal court has gone this far. *See Nixon* v. *Administrator of General Services,* 433 U.S. at 455–65; *Duplantier* v. *United States, supra,* 606 F.2d at 670 (appropriate test is "balancing" not "strict scrutiny"); *Plante* v. *Gonzalez,* 575 F.2d 1119, 1134 (5th Cir. 1978) (same). *Compare Whalen* v. *Roe,* 429 U.S. 589, 606–07 (1977) (Brennan, J., concurring) *with id.* at 607–09 (Stewart, J., concurring). We need not express a view about the strength or contours of whatever constitutional rights exist in this area, however, because we believe that the Ethics in Government Act does meet the strictest plausible test; it is a necessary means, well-tailored to attain compelling governmental aims. *A fortiori* it would meet any less restrictive standard.

Congress was explicit about its objectives in requiring officials to disclose financial information to the public. Public disclosure promotes public confidence in tʰ.ᵃ government, *see* S. Rep. No. 170, 95th Cong., 1st Sess. 21 (1977); no intragovernmental audit can be quite as successful in dispelling suspicion. Public disclosure can help correct deficiencies in the government's own auditing and reviewing procedures. *See* S. Rep. No. 823, 94th Cong., 2d Sess. 22 (1976). "Wide public availability of the financial disclosure reports" tends to "assure compliance with [the] disclosure requirements" themselves. H.R. Rep. No. 574, 95th Cong., 1st Sess. 11 (1977). In general, public financial disclosure makes officials' possible conflicts of interest a subject for debate and action by the public. As a result,

> [p]ublic financial disclosure will deter some persons
> who should not be entering public service from doing so.
> Individuals whose personal finances would not bear up to

---

v. *Little Rock.* 361 U.S. 516 (1960); *NAACP* v. *Alabama,* 357 U.S. 449 (1958). And it has recognized that, on occasion, financial information can reveal significant facts about activities protected by the First Amendment. *See Buckley* v. *Valeo.* 424 U.S. 1, 66 (1976), *quoting California Bankers Association* v. *Shultz.* 416 U.S. 21, 78–79 (1974) (Powell and Blackmun, JJ., concurring). But for several reasons the argument is inapposite here. First, the Act was drafted to avoid such an invasion of First Amendment rights so far as possible. Section 202(a)(6)(A), for example, requires an official to report positions held in outside organizations; but it does not apply to members of the official's family, and it specifically provides that the official need not report "positions held in any religious, social, fraternal, or political entity and positions solely of an honorary nature." This suggests that Congress carefully considered First Amendment interests when it drafted the Act. *Cf. American Fed'n of Gov't Employees. Local 421* v. *Schlesinger,* 443 F. Supp. 431, 434 (D.D.C. 1978) (financial disclosure questionnaire for government officials unconstitutional because it "prys into religious, social, political, educational, and fraternal associations both of the employee, the employee's spouse, his minor children and dependents"). Second, even when a statute requires an individual to disclose material that directly reflects his political views, the Supreme Court has required him to show "a reasonable probability that the compelled disclosure . . . will subject [him] to threats, harassment, or reprisals." *Buckley* v. *Valeo.* 424 U.S. 1, 74 (1976). The official here has made no such showing. Finally, even if there were a danger that the disclosure provisions would interfere with First Amendment rights, they are—as we shall discuss shortly—necessary to promote "governmental interests sufficiently important to outweigh the possibility of infringement." *Id.* at 66.

public scrutiny, whether due to questionable sources of income or a lack of morality in business practices, will very likely be discouraged from entering public office altogether. . . .

Public financial disclosure will [also] better enable the public to judge the performance of public officials. By having access to financial disclosure statements, an interested citizen can evaluate the official's performance of his public duties in light of the official's outside financial interests.

S. Rep. No. 170, 95th Cong., 1st Sess. 21–22 (1977). *See also* H.R. Rep. No. 574, 95th Cong., 1st Sess. 7–12. "[I]nformed public opinion is the most potent of all restraints upon misgovernment." *Grosjean* v. *American Press Co.,* 297 U.S. 233, 250 (1936).

The Supreme Court has said that because these sorts of goals involve the " 'free functioning of our national institutions,' " they can justify a decision by Congress to impose "not insignificant burdens on individual rights." *Buckley* v. *Valeo,* 424 U.S. 1, 66–67, 68, 72–74 (1976), *quoting Communist Party* v. *Subversive Activities Control Board,* 367 U.S. 1, 97 (1961). And the Supreme Court has allowed Congress to require disclosure in order "to maintain the integrity of a basic governmental process" even if the disclosure may have "some deterrent effect" on the exercise of constitutional rights. *United States* v. *Harriss,* 347 U.S. 612, 625–26 (1954). Certain public employees can be required to sacrifice important rights—even well-established First Amendment rights that can only be stronger than the rather nebulous privacy interests involved here—in order to ensure that "confidence in the system of representative Government is not . . . eroded to a disastrous extent," *United States Civil Service Commission* v. *National Association of Letter Carriers,* 413 U.S. 548, 565 (1973), and that "policies which the electorate has sanctioned are effectively implemented," *Elrod* v. *Burns,* 427 U.S. 347, 372 (1976) (plurality opinion).

Disclosure does not merely enhance public confidence in the government; it also improves the quality of public debate about such matters of general concern as possible conflicts in officials' loyalties. It expresses our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times* v. *Sullivan,* 376 U.S. 254, 270 (1964). To promote these ends, the Supreme Court has said that officials "who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs," *Rosenblatt* v. *Baer,* 383 U.S. 75, 85 (1966), cannot constitutionally be protected against certain efforts to damage their reputations, even if the legislature wants to protect them. *See, e.g., New York Times* v. *Sullivan,* 376 U.S. 254 (1964). The interest in reputation, of course, is akin to the sort of privacy the official here

claims is invaded by the Ethics in Government Act. In these various ways, then, requiring officials to disclose financial information plainly promotes compelling governmental ends.

Congress reasoned that its efforts to pursue these ends could be easily defeated if it did not also require officials' spouses to disclose certain information.[4] "[R]esources of a husband and a wife are usually held in common, and the financial interests of a spouse are generally shared by the partner. A bookkeeping arrangement wherein one spouse holds sole title to a particular financial asset does not mean that the partner does not share an interest in the financial holding." H.R. Rep. No. 574, 95th Cong., 1st Sess. 23 (1977). Congress also noted that, unless officials are required to disclose financial information about their spouses, they can easily evade both substantive and disclosure requirements by transferring interests. *See id.* at 22. Even officials who do not gain directly from their spouses' interests may simply wish to see their spouses gain. *Id.* at 22, 40. Those who want to influence an official may attempt to do so by benefitting the official's spouse. Moreover, even if these various evasions never occur, the danger that they will occur—and the public knowledge that an obvious loophole exists that might permit them to occur—would undermine a principal objective of the Ethics in Government Act, restoring public confidence in the integrity of the government.

Finally, requiring officials to disclose their spouses' financial interests is an important means of enforcing substantive conflict of interest laws. For example, in general an Executive Branch employee may not participate

> . . . personally and substantially as a Government officer or employee . . . in a judicial or other proceeding . . . or other particular matter in which, to his knowledge, he, his spouse, [or] minor child . . . has a financial interest.

18 U.S.C. § 208(a). Plainly, the public availability of financial information about an official's spouse helps enforce this conflict of interest provision, and the Supreme Court has recognized that Congress has a strong interest in using disclosure—not merely recordkeeping and reporting—to enforce substantive prohibitions. *See, e.g., Buckley* v. *Valeo,*

---

[4] In fact, the spouse need not disclose anything; the official must disclose information about his or her spouse. The House Committee

> considered, and rejected as irrelevant, arguments that the government may have difficulty in bringing a civil or criminal action against an individual who . . . filed an incomplete statement, because the spouse may have refused to provide the necessary information. This concern is more appropriately raised as a defense when the reporting person, despite a good-faith effort, is unable to comply with the reporting provisions of the law. The committee believes that such good-faith tests may be useful in reviewing specific cases of noncompliance, but that such situations should not be viewed as impediments to the passage of this bill.

H.R. Rep. No. 574, 95th Cong., 1st Sess. 24 (1977).

424 U.S. 1, 67-68 (1976). *See also Duplantier* v. *United States, supra,* 606 F.2d at 670-73.

Both the Act itself and its legislative history reveal that the disclosure provisions were narrowly drawn to promote these compelling ends. In connection with the disclosure provisions for all three branches, Congress considered the specific advantages of requiring public disclosure instead of permitting reports to be filed confidentially with government reviewing bodies. *See, e.g.,* H.R. Rep. No. 574, 95th Cong., 1st Sess. 7-12 (1977); H.R. Rep. No. 642, 95th Cong., 1st Sess. 27-29 (1977). Congress also "recognize[d] that reporting of financial interests of family members is a very sensitive matter." H.R. Rep. No. 642, *supra,* at 40; *see* H.R. Rep. No. 574, *supra,* at 8-12. Instead of requiring officials to disclose all financial information about their spouses, the Act creates exceptions consistent with its objective of removing both the opportunity and the appearance of an opportunity for evasion. A spouse need only report the source, not the amount, of his or her earned income. § 202(e)(1)(A). Gifts and reimbursements "received totally independent of the spouse's relationship to the reporting individual," § 202(e)(1)(B), (C), need not be reported. A spouse's liabilities, interests in property, and sales or exchanges of property need not be reported if four conditions are met: the official certifies that they "represent the spouse's . . . sole financial interest or responsibility"; the official "has no knowledge of" them; they "are not in any way, past or present, derived from the income, assets, or activities of the reporting official" and the official "neither derives, nor expects to derive, any financial or economic benefit" from them. § 202(e)(1)(D).[5] In addition,

> No report shall be required with respect to a spouse living separate and apart from the reporting individual with the intention of terminating the marriage or providing for permanent separation; or with respect to any income or obligations of an individual arising from the dissolution of his marriage or the permanent separation from his spouse.

§ 202(e)(2).[6] Clearly, then, Congress was not simply appeasing the public's general curiosity about the private financial affairs of high

---

[5] The official claims that these provisions—specifically, the terms "no knowledge" and "expects to derive . . . financial or economic benefit"—are unconstitutionally vague. On its face this claim is implausible; these terms are used frequently both in the law and in ordinary language and are seldom thought to be unusually unclear. In addition, the official here does not argue that their alleged vagueness affects him; that is, he does not say that he finds it difficult to decide whether these provisions require him to disclose certain of his wife's separate interests. Under these circumstances we see no reason to deny the enforcing agencies the opportunity to gloss any unclear provisions and make their meaning more plain. Moreover, only knowing or willful violations of the disclosure provisions can be punished. § 204. Because a violation caused by genuine uncertainty about the meaning of the provision would very likely be held not to be willful, these provisions may not present a constitutional problem even if their meaning is unclear.

[6] The disclosure provisions apply only to cohabiting spouses, not to other people who are living together and whose finances might be equally intertwined. The official argues that this unconstitutionally deters marriage and discriminates against married couples in favor of unmarried couples. Any

Continued

345

officials' families; it was seriously grappling with the dangers of various possible conflicts of interest.

Congress also attempted to limit the damage that might be caused by any invasion of an official's privacy. The financial disclosure reports filed by officials must be destroyed after 6 years. § 205(d). Under pain of a civil penalty, *see* § 205(c)(2), members of the public to whom the reports have been disclosed may not used them for commercial purposes, to establish credit ratings, or "directly or indirectly, in the solicitation of money for any political, charitable, or other purpose." § 205(c)(1)(D). Congress recently amended the Act to make these provisions easier to enforce. *See* § 205(b)(2); H.R. Rep. No. 114, 96th Cong., 1st Sess., 5–6 (1979).

Finally, the Executive Branch disclosure provisions apply only to high-level officials. *See* § 201(f). In the case law dealing with statutes like the Ethics in Government Act, this has been a crucial concern. In general, courts have been hostile to state financial disclosure legislation only when it applied to all officials or to officials with no significant responsibility for making policy. *Compare Slevin* v. *City of New York,* 477 F. Supp. 1051 (S.D.N.Y. 1979), *City of Carmel-by-the-Sea* v. *Young,* 2 Cal. 3d 259, 466 P.2d 225, 85 Cal. Rptr. 1 (1970), *and Advisory Opinion on Constitutionality of 1975 PA 227 (Questions 2–10),* 396 Mich. 465, 502–09, 242 N.W.2d 3, 18–21 (1976), *with id.* at 508, 242 N.W.2d 3, 20 (noting that statute that was unconstitutional as applied to all officials could constitutionally be applied to high officials alone). The Fifth Circuit, in addition to upholding the judicial branch disclosure provisions of the Ethics in Government Act, *Duplantier* v. *United States, supra,* has upheld a state statute that applied to high-level officials, *Plante* v. *Gonzalez,* 575 F.2d 1119 (1978). Several states have sustained similar statutes. *See id.* at 1124 n.8 (collecting cases). The Supreme Court has dismissed, for want of a substantial federal question, appeals from at least two decisions upholding state statutes that required information from high-level state officials about both their own and their spouses' financial interests. *Walsh* v. *Montgomery County,* 424 U.S. 901 (1976), dismissing appeal from 274 Md. 489, 336 A.2d 97 (1975); *Fritz* v. *Gorton,* 471 U.S. 902, dismissing appeal from 83 Wash.2d 275, 517 P.2d 911 (1974). *See also Stein* v. *Howlett,* 412 U.S. 925 (1973), dismissing appeal from 52 Ill.2d 570, 289 N.E.2d 409 (1972). This disposition by

incidental effect this provision might have on a couple's decision to marry does not present a constitutional problem. *Compare Zablocki* v. *Redhail.* 434 U.S. 374, 387 n.12 (1978), *with Califano* v. *Jobst.* 434 U.S. 47, 54 (1977). Congress generalized that cohabiting married couples are more likely to have the sort of financial relationship. that makes disclosure by both necessary to achieve the objectives of the Act; in view of the significance of marriage to family and property law. and particularly the greater ease with which married people can share or transfer property interests, this is a reasonable generalization. Indeed it is difficult to imagine a clear distinction that would be more accurate than the one Congress has drawn. Defining the precise sort of relationship between cohabiting. unmarried people that would require them both to disclose if one were an official might be a cumbersome task and might itself create constitutional problems.

the Supreme Court is ordinarily considered a decision on the merits. Thus precedent strongly suggests that a statute as well-tailored as Title II of the Ethics in Government Act is constitutional.

For these reasons, we believe that the government can constitutionally require the official in question to disclose the financial information about his spouse specified by the Ethics in Government Act.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*